J. WEBSTER MANNING,

*vs.*

MIDDLE STATES OIL CORPORATION, a corporation of the State of Delaware.

*New Castle, April* 13, 1927.

*Caleb S. Layton* and *James R. Morford*, of the firm of Marvel, Layton, Hughes & Morford, for complainant.

*Charles F. Curley*, and *Vincent T. Follmar*, of New York City, for defendant.

THE CHANCELLOR. The statute upon which the bill is based authorizes the Chancellor in his discretion to appoint a receiver of an insolvent corporation upon the application of any stockholder or creditor thereof. The complainant is a stockholder.

The bill was filed on April 1, 1925. It charges insolvency in that the defendant is "unable to pay its debts and is unable to meet its current obligations." The answer denies this charge.

In order to support his bill, the complainant must show a condition of insolvency existing as of April 1, 1925, when the bill was filed. The defendant contends that the evidence fails to show insolvency as of that date; and further that, even though insolvency be conceded as of that date, yet it further appears from the showing made by the defendant that the condition of insolvency does not now exist and that, such being the case, the situation is one where the exercise of discretion in favor of the appointment ought to be refused.

Insolvency existing at the time of the suit goes to an essential jurisdictional fact and must be shown. Such jurisdictional fact must be free from doubt and proof thereof should be clear and convincing. *Whitmer v. Wm. Whitmer & Sons, Inc.*, 11 *Del. Ch.* 222, 99 *A*. 428. But when the fact of insolvency is so shown, it does not follow that the appointment of a receiver will be made as a matter of course, because it will yet be necessary to find such facts in the case as will make a favorable appeal to the discretion of the Chancellor. And in *Sill v. Kentucky Coal & Timber Co.*, 11 *Del. Ch.* 93, 97, *A*. 617, it was indicated by Chancellor Curtis that such facts must be developed by the complainant rather than shown as a defense by the defendant.

There has been some intimation at one stage or another of this case that, even though insolvency existed at the time the bill was

filed and has continued ever since, yet there is good ground for refusing to exercise the discretionary power of appointment, because of this, viz., that general receivers of this corporation have been appointed by the United States District Court for the Southern District of New York, who have been extensively engaged in handling its affairs and are now in a fair way to hand it back to its owners in some reorganized form so that it may go forward into the future as a prosperous and successful company. This suggestion, however, does not appeal to me, and runs counter to the views expressed in the case of *Stone v. Jewett, Bigelow & Brooks Coal Co.*, 14 *Del. Ch.* 256, 125 *A.* 340. In that case I said that broadly speaking I was disposed to lay it down as a general rule for guidance that except in such extreme cases as are exemplified in *Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *A.* 312, the appointment of a receiver for a domestic corporation ought to be made in all cases where a foreign court has appointed a general receiver, provided of course the necessary jurisdictional facts exist.

While, however, the existence elsewhere of a general receiver for this Delaware corporation is a circumstance of very great, if not decisive, weight on the question of discretion, where the essential element of insolvency is shown, such circumstance has no relevancy whatever to the question of whether insolvency exists. Unless the fact of insolvency is either admitted in the foreign proceedings or judicially found upon evidence in a suit of which the finding court has jurisdiction, this court should, in determining whether insolvency is shown, view the case entirely aside from what the foreign court has seen fit to do and decline to allow the existence of the foreign receivership to have any prejudicial influence in the judicial act of forming a judgment upon the evidence.

I, therefore, turn to the evidence in this case to ascertain if insolvency at the time of the filing of the bill is shown, dismissing from my mind as completely as I can all knowledge of the fact that general receivers have been appointed for the defendant in the Southern District of New York.

What the complainant chiefly relies upon as showing insolvency at the time of the filing of the bill is an admission by the defendant of a certain allegation in a bill filed against it by one Phelan in the District Court of the United States for the Southern District

of New York. That bill was filed prior to the institution of the pending suit. The allegation referred to is as follows:

"Being unable to obtain any financial assistance from Middle States, or *to presently receive from Middle States any amounts of money belonging to them in its hands*, said subsidiaries find themselves unable at present to comply with the demands for payments being made upon them."

The allegations of the New York bill were admitted by the defendant on the day the bill was filed. The nearest that that bill comes to alleging insolvency is in the paragraph quoted. Is an admission of the truth of the allegation of that paragraph an admission of such insolvency as is contemplated by our statute?

Before answering that question, it is necessary first to note the fact that the defendant is what is known as a holding company. It was and is engaged in the exploitation of oil and gas properties. Its method of operation was to carry on its activities through the instrumentality of various subsidiaries, some fifty, I believe, in number. These are the subsidiaries referred to in the quoted paragraph from the Phelan bill. It appears that the subsidiaries were all in the control of and dominated of course by the defendant. In the main the operations of this congeries of corporations were carried on by the defendant as a single consolidated enterprise. Receipts and expenditures of all of them were gathered together by the defendant in consolidated accounts. So little heed was paid to the separate corporate identity of the various subsidiaries, that their separate accounts and funds were so inextricably entangled in the common mass of accounts which the defendant focalized around itself as the center, that in the course of time it became impossible for the defendant or its subsidiaries to disentangle the accounts of a given subsidiary from its associates in the group. Wherefore, says the Phelan bill in another of its admitted paragraphs:

"On account of the situation above outlined, it is impossible now to determine whether Middle States owes said subsidiaries or whether they owe Middle States, and it is likewise impossible to determine the financial condition of said subsidiaries as between themselves."

Now this being the situation, I recur to the question—Does the admission of the allegation first quoted from the Phelan bill show such insolvency as will justify the appointment under the

statute of a receiver? There is, to be sure, a clear admission, as contended by the complainant, that the defendant cannot pay whatever debts it owes to its subsidiaries. This being so insolvency might be said to be technically at least shown, for under our statute insolvency may exist where there is an inability to meet obligations as they mature in the usual course of business. *Whitmer v. Wm. Whitmer & Sons, Inc., supra.* To stop all further consideration of the question of this defendant's solvency with this statement, however, and not look further into the matter would in my opinion be unjustified. For there are other circumstances which strongly obviate the extreme consequences which the complainant seeks to deduce from the technical character of this apparent admission of insolvency. These circumstances are the following:

(a) In view of the language of the Phelan bill last above quoted, viz., that owing to confusion of accounts it is impossible to determine whether the defendant owes the subsidiaries, or the subsidiaries owe the defendant, or to determine the financial condition of the subsidiaries as between themselves, it is not unreasonable to conclude that all that was meant when it was admitted by the defendant that its subsidiaries were unable "to presently receive any amounts of money belonging to them" in the defendant's hands, was that such inability was due to confused accounts rather than to lack of funds to pay. It is significant in this connection that the admitted allegation charged not an inability of the defendant to pay, but an inability of the subsidiaries to receive.

(b) But if the admitted allegation is to be taken at its worst, as contended for by the complainant, that is, if it is to be understood as a charge and admission that the defendant was without funds to pay, then another consideration arises. Putting it in the form of a question, it is this—Is a holding company insolvent simply because it is unable to pay the balance due from it to its own subsidiaries, controlled and dominated by itself? Its subsidiaries being in the viewpoint of its business in reality nothing but branches of itself, the case of such a corporation as the question presents may be likened to that of a corporation which conducts all of its operations in its own name and which in its financial operations carries credit and debit charges *inter sese* its own various accounts or operating units. Now certainly with respect to a corpora-

tion of that kind, the present inability of one account, or of one operation, to discharge its obligations to another, could never be said to constitute insolvency on the part of the corporation. Similarly, where instead of conducting all of its operations in its own name distributed over different accounts and operations as in the case just put, a corporation organizes its activities into different subsidiary corporate units, a technical liability of it to one of its subsidiaries being but in substance a liability to itself is not such an insolvency as is contemplated by our statute authorizing receiverships. It might be said that if this view of the situation is the correct one to take, disregarding as it does the corporate identity of the subsidiaries as strangers unrelated to the common owner, then what debts are owed by the subsidiaries to outside creditors ought to be regarded as owed by the parent company, so that, if the inability of the latter to pay its technical obligations to the subsidiaries is accompanied by an inability on their part to pay debts owed by them to creditors outside of the related group, it ought to logically follow that the parent company is then in an insolvent condition. In other words, if the substance of the situation for receivership purposes is such as to deprive the subsidiaries of their character of creditors against the parent, the same substance of the situation when the parent is unable to pay its debts to the subsidiaries, ought to require that their unpaid debts be regarded as unliquidated obligations of the principal concern. This would appear to be so. Being so, then it might be argued that, inasmuch as the admitted allegations of the Phelan bill to the effect that the subsidiaries were "unable at present to comply with the demands for payments being made upon them," it necessarily follows that insolvency on the part of the defendant, the holding company, is therefore shown. The admitted allegation refers to August, 1924. It is shown by the evidence that now, however, all the subsidiaries are able to meet all their current obligations in full. If so, any condition of insolvency arising out of their plight has been removed, and no occasion for a receiver based on their incapacity to pay is shown presently to exist. Thus admitting the allegation of the subsidiaries' inability to receive moneys due them from the defendant in its most damaging implication, that is, as meaning an inability due to lack of funds in the hands of the defendant and

not to a confusion of its accounts as suggested under (a), it nevertheless appears that insolvency because of the condition of the subsidiaries does not now exist. So far, therefore, as the aspect of the case which is now being considered is concerned, a receiver should not be appointed.

Thus far I have been considering the question of whether insolvency of the defendant has been shown as a result of the admitted allegations of the Phelan bill in connection with the defendant's obligations to its subsidiaries and in turn with their obligations to outsiders. The finding on this branch of the case is that no such insolvency is shown as would justify the appointment of a receiver.

But the complainant does not rest his contention of insolvency on this alone. He argues that the evidence shows that the defendant at the time the bill was filed owed large sums of money to creditors other than subsidiary companies, which it was unable to pay, and that insolvency therefore existed based on the inability to pay its own primary obligations to unrelated strangers. That it so owed some small overdue accounts is admitted. But these admitted amounts are so small as to be trifling. It is impossible to believe that the defendant could not have arranged their payment with perfect ease. That it owed certain other large sums, though not admitted by the defendant, is insisted by the complainant. These sums are based on claims arising out of serial notes, guaranty of bonds, a bank loan and government assessments for taxes—all running into several millions of dollars. Laying aside the question of the claimed ability of the defendant to finance their payment if necessary, and when they accrued, whether before or after the present bill was filed and in what serial amounts, it is enough to observe that the company is seriously disputing the validity of most of them and strenuously contesting its liability. All that appears before me is that on the face of things alleged creditors in large amounts are claiming a status of creditors and the defendant is denying the claimed status. Even before the Phelan bill was filed back in 1924, the contention was asserted in another bill, a stockholders' bill filed by one Shivers, that the $5,500,000 of serial notes were illegally authorized. Judge Knox in the District Court of the United States, for the Southern District of New York, was sufficiently impressed by the preliminary showing made before

him in the Shivers suit to say with regard to this note issue that "the facts and circumstances of the note issue should be opened to the light of a court of inquiry." With the exception of a bank loan of something like $200,000, which is not a factor in the situation because it is more than amply secured and payment thereof is not being demanded, all the other claims referred to are in controversy between the defendant on the one hand and the claimants on the other. I am not put in possession of sufficient facts to enable me to pass an intelligent judgment upon these controversies. All I know is that the claims are disputed. The complainant who is not one of the claimants is necessarily laboring under the handicap of not having access to the facts which the claimants possess and which are essential for the forming of an intelligent judgment upon their merits. All the complainant in the nature of things can do is simply to assert without producing supporting evidence that the claims, having some show of validity on their face, must be invulnerable to attack. But this will hardly justify a finding to that effect. If such finding were made and a receiver were appointed, it would be quite embarrasing if at a later stage the receiver should file exceptions to the claims and if upon full investigation I should think the exceptions well taken; for in that event the order rejecting the claims would of itself condemn the decree naming a receiver as having been improvidently made for want of the essential fact upon which the statute requires that it should rest.

So long as the company refuses to admit the claims referred to and insists upon their invalidity, I think this court, in the absence of a clear showing that the claims are in fact valid, should decline to name a receiver. The complainant as before observed has failed to make such a showing.

I conclude, therefore, that insolvency at the time the bill was filed has not been shown with that degree of clearness which the settled rule requires. This makes it unnecessary for me to consider the further question of whether, assuming such insolvency to have existed at the time of the filing of the bill, a condition of solvency has since been restored.

Decree that the bill be dismissed with costs on the complainant.