Dent M. Freeman,

*vs.*

Hare & Chase, Inc., a corporation of the State of Delaware.

*New Castle, July* 18, 1928.

*George N. Davis* and with him *Robert H. McNeill,* of Washington, D. C., for complainant.

*Robert H. Richards* and *William Prickett,* for defendant.

THE CHANCELLOR. The defendant's business was that of buying on a re-discount basis from dealers in automobiles and trucks paper obtained by them from purchasers of such vehicles. The defendant did a business of great volume and financed it largely on credit obtained from banks upon notes secured by the re-discounted paper as collateral. Its loans from banks in January, 1927, totaled about $26,000,000.00. In that month a crisis in the defendant's affairs was precipitated by its unwise purchase of something over $4,000,000.00 of so-called taxi-cab notes which were discovered to be almost if not entirely worthless. It had maturing obligations in various banks and insufficient cash with which to meet them. In order to avoid the consequences to itself of an immediate crash but as well to save the class of business generally in which it was engaged and the banks throughout the country extensively engaged in financing such business from the damaging effect which the failure of a concern of its prominence in the field would entail, those in charge of the corporation called for a conference with representatives of Royal Indemnity Company, a subsidiary of Royal Insurance Company of Liverpool, England. Royal Indemnity Company had guaranteed $26,000,000.00 of the defendant's rediscounted notes which were pledged as collateral to demand notes issued under an indenture executed by the defendant to Equitable Trust Company of New York as trustee. These trust notes were used by the defendant for collateral purposes in securing loans from banks on its own notes to them.

In view of the impending collapse of the defendant's credit structure, it is apparent that Royal Indemnity Company, as guarantor was a party most vitally concerned. In the last analysis it, a perfectly solvent concern, stood in the position of soon becoming a paying guarantor of the defendant's creditors with recourse to the defendant only, a recourse which the immediate situation showed to be of doubtful if any value in the event of the defendant's threatened collapse as a going concern.

It was apparent that if the defendant could be supplied with funds with which to meet its immediately maturing obligations, and if its business could be kept going, its assets consisting of automobile purchase money notes liquidated in an orderly manner, the disaster to the defendant's creditors and stockholders as well as the damaging consequences to the automobile finance business generally which was impending might be in substantial part at least if not entirely avoided. Therefore a plan was devised which called for an advance by the Royal Indemnity Company of cash in the amount of $1,000,000.00 to meet the exigent situation of the defendant and an agreement by it to furnish $3,000,000.00 more. Representatives of four of the two hundred and forty banks holding the defendant's demand notes were called into conference in the hope of inducing them to withhold demands upon the defendant for payment and of securing for it further extensions of credit. The four banks agreed to take up to the extent of $8,000,000.00 any slack occasioned by a refusal of any of the two hundred and forty creditor banks to extend their credit. A phase of the plan was that the business of the defendant should continue to be operated under the control of the Royal Indemnity Company interests. An agreement was entered into whereby voting stock control was placed in the Royal Indemnity Company and a new board of directors was installed consisting of representatives from the three groups in interest—the Royal Indemnity Company, the banks and the defendant's directorate. The complainant undertakes to make very much of the point that the issuance of stock by the defendant whereby this control was effectuated was highly improper. Without touching upon the details of this phase of the matter, it is sufficient to say that so far at least as the present issues are concerned, nothing of damaging significance can be attributed to it. The stock has been or will be returned; and its issuance played an essential part in saving to the defendant and its stockholders all of whatever equities could be salvaged to them out of the wreck of the defendant's affairs.

Upon the completion of the foregoing arrangements, the defendant continued to function as a going concern, collected its accounts in the ordinary course and took on new business, the

banks extending further credit thereon backed by the continuing guaranty of the Royal Indemnity Company.

It appears to be agreed on all sides that if the Royal Indemnity Company had not interposed its efforts in behalf of the defendant and receivership or bankruptcy had been precipitated upon the defendant in January, 1927, there would have been absolutely nothing for the stockholders—indeed the assets would have fallen considerably short of paying off the creditors.

It is unnecessary to detail the various steps that were taken to bring order out of the chaos in which the defendant found itself in January, 1927. It is sufficient to state the results. These are, the defendant's debts have all been paid, its assets all sold, its business is being continued by a new company with a paid-in capital of $575,000.00 and an estimated business for its first year of $6,000,000.00, and a plan of re-organization has been devised whereby stockholders of the defendant may become stockholders in the new company upon an agreed basis, thus saving something out of a situation which at one time held out for them nothing but a complete loss. A substantial majority of the stockholders has expressed assent to the re-organization, and the only objector is the complainant who holds eight shares of preferred stock, out of a total stock issue outstanding of 47,008 shares of preferred and 118,754 shares of common.

The foregoing is a very brief resume of the story which if recited in detail would require a length of time and space that would hardly be warranted.

On this state of facts the defendant resists the appointment of a receiver, first because insolvency is not now shown to exist, and second, even conceding insolvency, the circumstances are such as to make an unfavorable appeal to the Chancellor's discretion.

As to insolvency. Insolvency under the statute may be of two kinds, viz. (a) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or (b) an inability to meet maturing obligations as they fall due in the usual course of business. *Whitmer v. Wm. Whitmer & Sons Co.*, 11 *Del. Ch.* 222, 99 *A.* 428. In the instant case, insolvency of the latter kind is alleged. While

there was an admitted deficiency of assets below liabilities at the time the bill was filed, yet the defendant, thanks to the financial aid of its prospectively largest creditor (Royal Indemnity Company, the guarantor of its paper), was enabled to take care of its maturing obligations as they fell due. Where the insolvency relied upon is based on an inability to pay debts as they mature, it would hardly do to say that such inability is demonstrated when payment is made but made out of borrowed funds. The fact that the money which paid the defendant's debts was borrowed money cannot therefore argue an inability to pay where the ground of insolvency is such as is alleged here.

There is another consideration appropriate of notice under this head. I refer to this, that while insolvency must be shown at the time the bill is filed, yet if since the bill was filed the condition of insolvency has been removed, a receiver should not be appointed. See *Manning v. Middle States Oil Corp.*, 15 *Del. Ch.* 321, 137 *A.* 79. The evidence shows that at the present time the defendant is without assets and without creditors. All of the former have been sold and transferred under the provisions of *Section* 64a of the *General Corporation Law* (34 *Del. Laws, c.* 112, § 13), and all of the latter have been fully satisfied. A corporation without either assets or creditors cannot be said to be insolvent. The defendant's present denuded condition is explained by the steps taken in carrying out the re-organization plan. While the complainant finds much to say in criticism of that plan, yet I cannot see how the points of criticism have any bearing on the question presented by this bill, which is whether or not the defendant is insolvent.

The complainant makes the point that there are certain unpaid claims due to lawyers for services rendered in connection with various litigation in which the defendant has been involved since its troubles reached a head in January, 1927, and that the defendant, being now without funds, is unable to pay these claims and is therefore insolvent. Though the complainant interrogated witnesses touching these supposed debts to lawyers, he was unable to show that any lawyer makes any claim against the defendant. Though the record fails to disclose the facts, I suppose the lawyers will be duly paid, if they have not already

been paid, by the parties interested in directing the affairs of the defendant to their present status.

As to whether, admitting insolvency, the Chancellor's discretion ought to move in favor of a receiver. The statute under which the pending bill was filed leaves the granting of relief in the discretion of the Chancellor. That discretion must of course be a sound one. It cannot be arbitrarily exercised. In *Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *A.* 312, the following pertinent language was used:

> "When a corporation has no assets, no useful purpose can be subserved by naming a receiver—an officer of the court whose function under the statute is to take, hold, manage and administer assets; and in such case, the receiver ought not to be appointed. * * *

> "If it appears that there are no assets available to a receiver, nothing for him to take and, therefore, nothing for him to do in the event of his appointment, I shall decline to make the appointment. * * *

> "It appears that all the creditors of this corporation own debts payable in the jurisdictions where the assets were taken and sold; that there are neither assets nor creditors in the State of Delaware; and that there can in no event be a surplus of assets after creditors are paid. If it were otherwise, so that there would appear to be a surplus after debts available for stockholders, then it would be advisable for this court, in whose jurisdiction the corporation is domiciled, to appoint a receiver for the purpose of receiving such surplus from the foreign jurisdictions and distributing it among the stockholders. But such is not the case."

This language fits the facts in this case, and is in itself enough to control the Chancellor's discretion adversely to the appointment. There is something more that may be said, however, which is peculiarly pertinent to the facts of this case. Here was a corporation which in January, 1927, was in a desperate situation. Liquidation at that time would have spelled total loss for its stockholders and substantial loss to its creditors. One creditor, out of a spirit to be sure of selfish interest, nevertheless came to its rescue. It called to its aid other creditors, extended large credits and undertook to save to all parties in interest as much as could be saved. I am compelled to say that it appears to have done strikingly well in its self-appointed task. It was in the power of creditors at that time to resort to a course of procedure, bankruptcy or receivership, which would have left nothing what-

ever for the stockholders. The complainant admits that up to when the Royal Indemnity Company took the helm, there was absolutely nothing in the way of equity in this defendant's assets for stockholders. Had a receiver been then appointed, this court would have directed a liquidation of assets and a distribution which could not have extended beyond creditors to stockholders. Instead of pursuing a course holding that prospective outcome, the Royal Indemnity Company undertook, while saving itself, to effect something in the way of a re-organization which would save to the stockholders whatever possibilities might inhere in the continuance of the defendant's business as a going one. It has done that. I am at a total loss to see wherein the complainant as a stockholder has been other than benefited by what has taken place when contrast is had with what might have happened. It would seem to be an abuse of discretion for the Chancellor now to name a receiver who, if he should seek to undo the things that have already been done would, if he were successful, render nugatory what, so far as appears, ought in fairness and justice to all to be left as it is. The creditors who in essence were in one sense of the word the equitable owners of the assets in January, 1927, took charge and effected a re-organization, a thing which though desirable could hardly have been accomplished by any court through insolvency or receivership proceedings, for the simple reason that the mere fact of the proceedings would, because of the peculiar nature of the defendant's business, doubtless have damaged it beyond hope of repair. It does not seem that the accomplishment which has been effected ought to be harassed now by a receivership which at the most, so far as I can see, could produce nothing of good but on the contrary would be pregnant with possible injury, not to say mischief.

The complainant insists that a receiver should be appointed to bring suits against officers of the corporation in order to recover for the stockholders the losses which he argues the officers are responsible for. If the evidence showed any ground upon which to rest a reasonable belief that the officers had rendered themselves liable to a claim for restitution, there would be more merit in the complainant's insistence. But nothing is shown upon which to base any such belief. The only thing shown is the

suffering of a heavy loss, particularly occasioned by the purchase of taxi-cab paper. But such a loss is consistent with bad judgment. Surely the failure of a corporation does not *ipso facto* demonstrate a recoverable claim against its managers. Seeing nothing in the record which discloses even so much as a hint of liability on the part of the officers, a receiver ought not to be appointed for purposes of bringing imaginary suits. The complainant is doubtless chagrined at the failure of this corporation to prosper as he expected it would and should. Unwise business management, however, which is all that is shown here, while a source of irritation to dissappointed stockholders does not in itself necessarily show recoverable grounds of action against those responsible therefor.

The bill will be dismissed, with costs on the complainant.