## FIRST NAT. BANK OF WICHITA FALLS v. FOLEY.

### No. 3371.

Court of Civil Appeals of Texas. Amarillo.

March 5, 1930.

Rehearing Denied March 26, 1930.

J. T. Montgomery and Kilgore & Rogers, all of Wichita Falls, for appellant.

Carrigan, Britain & King, of Wichita Falls, for appellee.

RANDOLPH, J.

This is an appeal from a judgment in a garnishment suit filed by appellee, Foley, against the First National Bank of Wichita Falls, ancillary to a suit by Foley against one J. W. Taylor. From a judgment in favor of Foley, the garnishee, the First National Bank, has appealed.

The writ of garnishment was issued April 12, 1927. It was returnable May 2, 1927. On May 2, 1927, the bank filed its motion to quash the writ of garnishment.

The garnishee's motion to quash the above writ of garnishment was never acted on by the trial court.

On the 10th of May, 1927, the appellee, Foley, secured another or second writ of garnishment to issue in the same cause, which was served upon the garnishee bank on the same day it was issued.

On July 5, 1927, the garnishee bank filed its sworn answer to the writ of garnishment served upon it in this case about May 11, 1927, in which the garnishee answered that it was not indebted to the defendant Taylor when this writ was served upon it in any sum whatever; that at no time since has it been indebted to J. W. Taylor in any sum, and that it is not now indebted to said Taylor; that it has not now, did not have at the time said writ was served upon it, and has at no time since said writ was served, in its possession any effects belonging to said Taylor, and that no other persons within its knowledge are indebted to said Taylor or have effects belonging to him in their possession; that said Taylor does not now own and has never at any time owned any stock in garnishee bank; that he did not own such stock when this writ was served, does not now own any, and has never owned any, stock in said corporation; further alleging the employment of attorneys and praying for $25 as their compensation.

On January 16, 1928, appellee, Foley, filed his controverting answer, which was not sworn to, alleging that he has good reason to believe that the answer of the garnishee, First National Bank, is incorrect in this, that at the time the writ of garnishment was served upon said bank, the bank was indebted to said Taylor in some amount, which amount is unknown to affiant, but which affiant alleges and believes to be a substantial sum of something like, or perhaps more, than $1,000, and that said amount was on deposit at said bank to the credit of said Taylor at the time the writ of garnishment was served upon it, and that said bank is now undertaking to say it appropriated the amount of money so on deposit to J. W. Taylor's credit, to the payment of certain notes owed by Taylor to said bank.

Affiant also alleges that he is informed and believes that neither of the notes owed by Taylor to the bank was due at the time the writ was served upon it; that one of the notes was owed by said Taylor together with E. W. Taylor and was in the sum of $750 and due May 18, 1927, and another note from J. W. Taylor to said bank which was not due until the 8th of June, 1927; this last note being in the sum of $1,250. The affiant further swears upon information and belief that, at the time the writ was served upon said bank, the funds had not been transferred by Taylor to said bank, and that the bank had no right to appropriate said moneys, and that the affiant is therefore entitled to recover the same by his writ of garnishment.

On October 30, 1928, the bank filed an answer to the writ of garnishment served upon it on the 12th of April, 1927, alleging substantially that, when the writ was served upon it, J. W. Taylor had on deposit with it the sum of $802.20, aside from which the garnishee did not then have nor had it at the time of the writ, effects of J. W. Taylor in its possession, nor did it know of any other persons who were at said time indebted to Taylor or who had effects belonging to him in their possession; that said Taylor had no shares in the bank, nor did he own any at the time of the return of said writ; that,

aside from the $802.20, the said Taylor was not due anything from said garnishee and had no interests at said respective time in said stock or bank; that, subsequent to the service of said writ, Taylor, being indebted to the garnishee in a sum in excess of the amount on deposit, gave it his check for $802.20; same was given, cashed, and said account closed April 26, 1927; that on April 12, 1927, and at all times subsequent thereto, said Taylor was and is wholly insolvent, and, being insolvent and being indebted to the bank in an amount in excess of his deposit, the fund so on deposit was not subject to garnishment, the bank exercising its right to offset the amount due it by defendant with said deposit; further alleging that, owing to the second garnishment causing garnishee to be put to expenses with reference to the first writ, the garnisher is estopped from asserting any claim he had under the first garnishment, etc.

On October 29, 1928, the appellee, Foley, filed his "answer to defendant's answer in garnishment," and denied the insolvency of Taylor by way of special plea and that defendant, having failed to file its answer in garnishment promptly and within a reasonable time after the running of said garnishment, was estopped to plead insolvency of Taylor, because, if same had been filed promptly, he would have pursued other remedies.

On October 30, 1928, defendant filed its supplemental answer consisting of exceptions and general denial and a special plea alleging the knowledge by plaintiff of Taylor's insolvency.

The cause was submitted to a jury on a definition of insolvency, and one special issue, and further that the burden of proof was upon the defendant bank to show the affirmative of the above issue by a preponderance of the testimony.

The appeal here is submitted to this court upon eight propositions, alleging errors on the part of the trial court, some of which are so related that we can discuss them together, and we will so consider them.

■■ The verified answer of the defendant alleging a state of facts, the prima facie verity of which would discharge appellant defendant, and, the plaintiff filing no controverting affidavit, it was error, as claimed by defendant, on the part of the trial court in refusing to peremptorily instruct a verdict for the defendant.

Article 4086, V. A. T. C. S., provides as follows: "If it appears from the answer of the garnishee that he is not indebted to the defendant, and was not so indebted when the writ of garnishment was served on him, and that he has not in his possession any effects of the defendant and had not when the writ was served, and when the garnishee is an incorporated or joint stock company in which the defendant is alleged to be the owner of any shares of stock or interested therein, if it further appears from such answer that the defendant is not and was not, when the writ was served, the owner of any such shares, or interested in such company, should the answer of the garnishee not be controverted as hereinafter provided, the court shall enter judgment discharging the garnishee."

As shown above, the first writ issued was issued and served upon the defendant on April 12, 1927, and was returnable to the May term of court on the 2d day of May, 1927. The garnishee filed no answer on the return day, but did, on that day, file its motion to quash the writ, and on July 5, 1927, filed the above-noted answer in garnishment. The plaintiff's controverting affidavit was not filed until January 16, 1928; hence the claim of defendant that the answer of the defendant, being duly verified, entitled it prima facie to a discharge.

The parties do not seem to have filed the answers and controverting affidavits with any undue haste, nor does it appear that the defendant appeared before the court prior to the filing of the plaintiff's controverting affidavit with any demand of the court that it be discharged; the question of discharge being raised only on the hearing of the case for garnishment.

Article 4087 provides that the garnishee shall in all cases, after legal service, file an answer to the writ of garnishment on or before return day of the term of court to which such writ is returnable, and, should the garnishee fail to file such answer to such writ as therein required, it shall be lawful for the court, at any time after judgment has been rendered against the defendant in the main case and on or after appearance day, to render judgment by default as in other cases against garnishee, and that the answer of the garnishee may be filed at any time before such default judgment is rendered.

Article 4094 is as follows: "If the plaintiff should not be satisfied with the answer of any garnishee, he may controvert the same by his affidavit stating that he has good reason to believe, and does believe, that the answer of the garnishee is incorrect, stating in what particular he believes the same is incorrect. The defendant may also, in like manner, controvert the answer of the garnishee."

While article 4087 expressly allows the filing of garnishee's answer at any time before judgment by default is taken, article 4094 does not designate any time in which plaintiff's controverting answer shall be filed; hence we think that the plaintiff has the same latitude as the garnishee, and that the filing of the controverting affidavit may be done at any time prior to the taking of a judgment by default.

The plaintiff, at the time of trial, had on file a duly sworn pleading attacking the garnishee's answer, but we do not think this answer was necessary, as the answer of garnishee presented an issue for consideration of the trial court; i. e., the insolvency of the defendant. The garnishee admitted in its answer that at the time it was served with the writ it was indebted to the defendant in the sum of $802.20, but that the defendant was indebted to it in a sum in excess of that amount, and that the defendant, being insolvent, it was entitled to offset this deposit against defendant's indebtedness to it. The issue presented to the court was not a clearcut denial of indebtedness, but a denial qualified by its equitable right to offset the indebtedness owing to it against the deposit in its bank, and the issue of insolvency was thus presented by the defendant's own pleadings. White v. San Miguel (Tex. Civ. App.) 66 S. W. 311; Sellers v. Puckett (Tex. Civ. App.) 180 S. W. 639.

■ The court correctly placed the burden of proof on the defendant to sustain the affirmative of the issue of insolvency. If the answer of garnishee had been in such form as to present an absolute denial of the questions asked in the writ, the rule would have been different, for such an answer would have presented a prima facie defense, but, under the allegations of the answer filed by the garnishee, the question of insolvency presented such an issue of fact for the investigation and determination of the court upon the proof. Hence the claim of defendant, after admitting its indebtedness, that the defendant in the main case was insolvent, placed upon it the burden of proof of insolvency of such defendant in order for it to be entitled to judgment. Neely v. Grayson County National Bank, 25 Tex. Civ. App. 513, 61 S. W. 559; Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; Duron et al. v. Beaumont Iron Works (Tex. Com. App.) 9 S.W.(2d) 1104.

In the case of the Stockyards National Bank v. Presnall, 109 Tex. 32, 194 S. W. 384, 385, the court holds: "At the time of the service of the writ Rogers was indebted to the bank upon two notes, neither of which had matured. He was then a citizen of Oklahoma. No contention is made that he was insolvent. We decline to hold that the mere fact of his non-residence entitled the bank to offset the deposit against the unmatured notes and thus destroy the effect of the garnishment. It is a primary rule that a debt must have matured to be available as a set-off. An exception is made where the debtor is insolvent. But this is upon the equitable ground that, otherwise, the debt cannot be collected. No such equitable consideration is presented by the mere nonresidence of the debtor. We allow the seizure of the property of a non-resident by the extraordinary writ of attachment only upon affidavit that the debt sued upon will probably be lost unless the attachment issues, and permit no judgment appropriating his property in such a case until the debt has matured. If a bank may offset the deposit of a non-resident against his unmatured note, such a depositor would never know when he could with safety draw against his deposit. The contract expressed by a note protects the maker against the demand for payment until its maturity. Non-residence has some disadvantages, but hardly that of itself absolving the other party from a contract. ·The deposit was subject to the garnishment."

See, also, Hamilton v. Van Hook, 26 Tex. 302.

■ The court submitted to the jury only one issue, "Was J. W. Taylor insolvent ·on the 12th of April, 1927?" which the jury answered "No."

In order to aid the jury in answering this question, the court in its charge defined insolvency in law as that condition where "a person has not sufficient means in money or in property at its fair valuation, or in both money and property, to pay his debts."

The defendant tendered to the court the following special charge: "You are instructed that by the term 'insolvency' as used in special issue No. One of the Court's charge, is meant the inability of a party to pay his debts as they become due in the ordinary course of business." Also the defendant submitted an instruction to the court, with the request to submit same to the jury, that they should not take into consideration, in determining the question of insolvency, such property of defendant as was exempt from execution.

This definition of insolvency was evidently taken in part from section 1, p. 24, tit. 11, subd. 15, of the U. S. Code Ann., which is as follows: "(15) a person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

It is clearly the purpose of this act to furnish a measure of insolvency for the operation of the bankruptcy court. It is expressly provided by its terms that such person shall be deemed insolvent "within the provisions of this title," and that such definition was not intended to furnish the courts of the states a rule by which they should be guided. As we do not think this definition agrees with the definition of insolvency laid down by the courts of this state, we are not constrained to follow it.

There are many conditions which will make the person owing debts insolvent. To a great extent the circumstances of a particular in-

dividual may constitute him a bankrupt and in the accepted definition will not cover his case. So far as the actual insolvency of a debtor is concerned, he may be, under the laws of this state, actually insolvent, even though he had money on his person in excess of debts and also if he had in his possession negotiable promissory notes in excess of his debts, and yet, by his failure or refusal to pay his debts, he would be actually insolvent so far as the ability of his creditor to require him to pay is concerned.

In the case of Blum v. Welborne, 58 Tex. 157, Justice Stayton quotes with approval the following excerpt from Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481: "The term insolvency is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning; but it is also used in a more restricted sense to express the inability of a party to pay his debts as they become due in the ordinary course of business."

Judge Stayton then says: "A debtor is said to be in contemplation of insolvency when he contemplates not being, or not continuing to be, able to pay his debts in the ordinary course of business as they mature."

Judge Pleasants of the Galveston Court of Civil Appeals lays down the rule in Langham v. Lanier, 7 Tex. Civ. App. 4, 26 S. W. 255, 256, that "the deed of assignment, which is referred to and made part of the pleadings excepted to, shows that the assignors were unable to pay their debts in the ordinary course of their business; and such inability is, in judgment of law, insolvency."

In the case of Smith v. Ojerholm, 93 Tex. 35, 53 S. W. 341, the Supreme Court, holding that a debtor, as to his creditors, is not insolvent when he holds property against which the creditors may enforce a lien for the payment of a debt, says: "The term 'insolvency' has widely different meanings. When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent."

See, also, First National Bank v. Robinson (Tex. Civ. App.) 124 S. W. 177; San Antonio Hardware Co. v. Sanger (Tex. Civ. App.) 151 S. W. 1104.

In the case of Turkey State Bank v. Estelline State Bank, 272 S. W. 775, 776, the Commission of Appeals says: "It is not insolvency in its popular sense that the law regulating bank and trust companies and kindred corporations deals with, but insolvency in its legal sense, which exists whenever such an institution as this, from any cause, is unable to pay its debts."

See, also, Bushman v. Bushman, 311 Mo. 551, 279 S. W. 122; Manning v. Middle States Corporation, 15 Del. Ch. 321, 137 A. 79.

The definition of insolvency given by the court to the jury should have excluded from their consideration all property exempt by the laws of this state from sale under execution or from levy or attachment.

Taking the rule to be that a debtor is insolvent where he fails or refuses to pay his debts in due course of business, we do not think that insolvency was properly defined in the court's charge.

■ A "fair" valuation of his property furnishes no guide or rule to arrive at such insolvency. What is meant by fair valuation? When can such a valuation exist and how is it to be arrived at? It seems to us that a "fair" valuation leaves too much to be guessed at by each individual constituting a jury. The reasonable market value is ordinarily the rule to be placed on property, and, in the absence of a market for the property, by which the value can be arrived at, then what is its inherent value. This is said, should we be wrong in our definition of insolvency as given above, that is, that a person is insolvent where he fails or refuses to pay his debts in due course of business and if the term fair value is to control, such fair valuation is made up of many elements, and the court should have admitted the testimony as to the reasonable market value as a circumstance establishing a fair valuation for the guidance of the jury.

We do not think that the bank should be required to abandon its claim upon the money on deposit which came to it in the mutual transactions of the parties and seek the doubtful remedies provided by law for the collection of its debts.

Because of the errors indicated above, the judgment of the trial court is reversed, and the cause is remanded for a new trial.