EDGAR KENNY, on behalf of himself and all other stockholders of The Allerton Corporation, similarly situated,

*vs.*

THE ALLERTON CORPORATION.

*New Castle, July* 28, 1930.

*Aaron Finger*, of the firm of Richards, Layton & Finger, and *David W. Kahn* and *Samuel Hoffman*, both of New York City, for complainant.

*Christopher L. Ward, Jr.*, of the firm of Marvel, Morford & Ward, *John F. Caskey*, of the firm of Hughes, Schurman & Dwight, of New York City, for defendant.

THE CHANCELLOR. Insolvency under the statute may consist of two types. It exists where the liabilities exceed the assets, or where there is an inability to meet current maturing obligations in the ordinary course of business. The bill relies on insolvency in the latter sense. Insolvency in the sense of a deficiency of assets below liabilities, is not only not alleged, but appears to be admitted not to exist in point of fact.

Even when insolvency is shown, the appointment of a receiver will not follow as a matter of course. Whether the appoint-

ment should be made is always a question that rests in the sound discretion of the Chancellor. *Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *A.* 312; *Freeman v. Hare & Chase*, 16 *Del. Ch.* 207, 142 *A.* 793.

Furthermore, the insolvency alleged must be shown to have existed at the time the bill was filed, *Manning v. Middle States Oil Corp.*, 15 *Del. Ch.* 321, 137 *A.* 79; and, though shown then to exist, yet if the condition of insolvency has been since removed, discretion will be exercised against the appointment of a receiver. *Freeman v. Hare & Chase, supra.*

Inasmuch as insolvency is a jurisdictional fact, proof in support of it must be clear and convincing and free from doubt. *Whitmer v. Wm. Whitmer & Sons*, 11 *Del. Ch.* 222, 99 *A.* 428; *Manning v. Middle States Oil Corp., supra.* "To doubt in such a case is to deny," is the language of the Vice-Chancellor in *Atlantic Trust Co. v. Consolidated Electric Storage Co.*, 49 *N. J. Eq.* 402, 23 *A.* 934, 935.

With these principles in mind it is now in order to turn to the facts with the view of seeing whether they support a case in which receivership relief should be afforded.

The defendant is what is familiarly known as a holding company. This view is disputed by the complainant, but wrongly so I think. It is true the defendant exercises a very close supervision over the affairs of its subsidiaries and directs in an intimate way their operations. But the corporate identities are strictly observed and each company in the group apparently carries on its affairs in strict conformity with its existence as a distinct corporate creature. Each holds its own assets, current receipts are not commingled and current liabilities are separately charged and borne by each. There has been considerable inter-corporate lending and borrowing, but these are reflected on the books of each as though each had no common bond of interest with another. It is true that the defendant as the parent prepares a consolidated balance sheet from time to time. But this is only in conformity with common practice in such cases and amounts to nothing more than a convenient method of disclosing for its own information the status and current condition of its investments in the various constituents. All that the defendant owns consists of

shares of stock in its subsidiaries. It borrows from one and lends to another. Outside of funds received from borrowings, either from its own subsidiaries or from the public, its only receipts so far as the record discloses are derived from dividends declared on the stocks of the subsidiaries held by it.

The defendant's investments are in the field of the apartment hotel business. It owns the entire outstanding capital stock of the following New York corporations:

Allerton Realty Company, which owns a four story hotel building of one hundred and fifty rooms at Twenty-Second Street and Eighth Avenue, New York City.

Allerton 55th Street Corporation, which owns a sixteen story hotel building of four hundred rooms at Fifty-Fifth Street and Madison Avenue, New York City.

Allerton New York Corporation, which owns a seventeen story hotel building of four hundred and fifty rooms at Fifty-Seventh Street and Lexington Avenue, a sixteen story hotel building of three hundred and ninety-one rooms at 143 E. Thirty-Ninth Street, and a seventeen story hotel building of four hundred and fifty rooms at Thirty-Eighth Street and Madison Avenue, all in New York City.

Allerton Operating Corporation, which is a mere operating company in which is centered the paying of bills, the hiring and dismissing of employees for the various hotels. It has no assets.

Allerton House Company, which owns stock in Allerton-Cleveland Company, hereinbelow referred to, an investment of about $90,000 in another corporation known as Allerton Fifty-Ninth Street Corporation, which investment is likely to be shortly realized, and an interest in a Country Club property at Rye, New York.

In addition to owning the entire interest in the foregoing New York corporations, the defendant in its own name and through its wholly owned subsidiary, Allerton House Company, owns the following controlling but not entire interests in two other corporations:

Allerton-Cleveland Company, a corporation of Ohio, all of the one thousand shares of outstanding Class A common stock, twelve hundred and eighty shares out of twenty-five hundred

outstanding of the Class B common stock, and none of the four thousand and fifty-seven shares of outstanding preferred stock.

Allerton Company of Chicago, a corporation of Illinois, fifteen hundred and ten out of the thirty-eight hundred and twenty-five outstanding shares of preferred stock and thirty-seven hundred and twenty-five out of the fifty-three hundred and nineteen outstanding shares of common stock.

These two corporations respectively own and operate a hotel in each of the cities of Cleveland and Chicago.

The complainant placed a value on the New York hotels, which, it may be said, appear to be quite profitable and exceedingly well located, of $9,451,695. The funded mortgage indebtedness of them is $5,307,500, which, on the value given, shows an equity of $4,144,195.

The defendant has an outstanding issue of debentures in the amount of $1,862,000, secured by a pledge of all the stock of the New York corporations other than of Allerton House Company, and of the stock in the Ohio and Illinois corporations directly held by it.

The above is a summary of the defendant's assets and funded liabilities. The Chicago and Cleveland properties appear to have been thus far unprofitable. As of April 30, 1930, they have borrowed from the defendant on open account something over $1,500,000, and the defendant in turn has borrowed from its wholly owned subsidiaries, Allerton New York Corporation and Allerton 55th Street Corporation, $582,557.14. This latter intercorporate borrowing was, I believe, necessitated by the needs of the Illinois and Ohio companies.

Because of the Chicago and Cleveland ventures, the defendant appears to have been confronted with some troublesome cash problems. Had its New York properties been the only ones in its system, its investments would on the whole be showing most satisfactory results. But the investments in Chicago and Cleveland have thus far been unprofitable and have been the chief if not the sole cause for what cash difficulties the defendant has recently encountered in the management of its subsidiaries and their affairs.

It is the occurring of these cash difficulties that the com-

plainant points to as justifying his charge that the defendant, while solvent in the bankruptcy sense, is nevertheless insolvent in the sense that it is unable to meet its current obligations in the ordinary course of business. The particulars of these difficulties will now be referred to and the weight of them considered as bearing on the question of whether a case for a 'receiver has been made out.

(a) Under this head it is pointed out that on May 1, 1930, interest amounting to about $47,500 which fell due on the bonds of the Allerton-Cleveland Company was not paid. The significance of this is that while the interest on the Cleveland company's bonds was the primary debt of that company, yet the defendant was a. guarantor of the bonds both as to principal and interest. The bill was filed May 2, 1930, one day after the default in payment of interest by the Cleveland company arose. The defendant as guarantor of this interest may have omitted to see that it was paid on the due date because of its own inability to advance the funds necessary for the purpose or for other good and sufficient reasons unconnected with a lack of ability to raise funds of its own to advance; or it may have deemed it best to endeavor to work out the problem of unpaid interest through the Cleveland Company itself. The terms of the contract of guaranty are not shown, and the complainant declined an offer of a copy of the instrument containing it for insertion in the record. In the absence of a showing of the terms of the contract of guaranty, I do not care to speculate upon them. For all that we know, the contract of guaranty may be such as not to fix immediate liability on the defendant. To say that the defendant has guaranteed certain liabilities is to speak in exceedingly indefinite terms. The court is entitled to know the character of the contract evidencing the guaranty before it would be justified in allowing to it any weight as a predicate for a receivership decree.

(b) Taxes on real estate of the New York subsidiaries which were due May 1 and November 1, 1929, were unpaid at the time the bill was filed. These have, however, been since paid. But taxes due on the same properties on May 1 of this year in the amount of about $93,000 were unpaid. These taxes are not the debt of the defendant. They are owed by the New York sub-

sidiaries. The defendant's indenture securing its issue of debenture bonds, however, contains a covenant that the defendant will not allow taxes on the property of its New York subsidiaries (whose stocks are pledged as collateral to the defendant's debentures) to remain unpaid. Breach of this covenant constitutes a default under the defendant's indenture and entitles the trustee to accelerate the due date of the debentures to sixty days after notice of the default was served. The fact that during 1927 a similar default occurred and no advantage was taken of the fact, would seem to indicate that there is no reason for treating a similar default on May 1, 1930, as catastrophic on the next day, when this bill was filed. The defendant, before it is subjected to the serious consequences of a receivership under the statute, ought to be indulged a fair chance, in the midst of its difficulties arising from its Cleveland and Chicago ventures, to take care of these New York taxes as it did before.

The complainant further urges that if the default is not removed and forgiven (as it may be under the indenture) the entire issue of debentures will fall due sixty days after notice, and the trustee will sell the valuable stocks held by it as collateral, to the great loss and damage of the defendant. In answer to this two things are to be said. First, the trustee has not given the notice required for acceleration of the due date; and second, the appointment of a receiver as prayed for would in itself likewise constitute a default making possible an ultimate sale of the collateral. It seems to me that if the complainant were successful in securing a receiver he would bring about a default much more serious than that which the unpaid taxes give rise to. If that sort of default were to ensue upon the other one, the trustee would doubtless be moved to give the notice of acceleration. While the trustee has not as yet been greatly disturbed by the tax payment delays, a receivership for the defendant, accumulated upon the tax default, would prove a just cause of alarm to it. Thus the receivership which the complainant seeks for protection against the consequences of the trustee's moving to foreclose the collateral would in all probability precipitate it. When the trustee serves the stipulated notice and prepares to make sale of the collateral, if it ever does, protection against a

sacrifice thereof can be secured then by a receivership as effectually as it can be now by the appointment of a receiver before any attempt to take advantage of a default has been made.

(c) At the time the bill was filed, the defendant owed open accounts to Allerton New York Corporation and to Allerton 55th Street Corporation of over $500,000 and these corporations were in need of funds to pay their own obligations to creditors. The unpaid taxes are the only debts owed by these subsidiaries to which this statement is referable. The taxes, it should have been before stated, while due May 1 are given a period of grace to May 31, before any penalty is added. After that day a penalty of a seven per cent. interest charge is added. The taxes may go unpaid for a period of three years before sale of the tax lien can be had. That being the situation, these wholly owned subsidiaries are in no such serious plight over their taxes as to call for an appointment of a receiver for their parent company because of its debts to them.

(d) The defendant was in default on the date the bill was filed in the sum of four thousand dollars due to the sinking fund under the indenture securing its debentures. This default has since then, however, been removed.

(e) An interest payment on the defendant's own debentures, amounting to about $56,000 matures July 1, 1930, and the defendant was shown, says the complainant, to be without funds or means to pay the same. Speaking as of the date when the bill was filed, this statement is a mere prediction. There was no unpaid debt of this character on May 2, 1930, when this suit was instituted. Of course, if insolvency were shown as of the date of the filing of the bill, it would be entirely permissible to take into account the existence of shortly accruing obligations and the probability of their non-payment when their due date arrives, as one of the factors entering into the Chancellor's exercise of his discretion. This defendant does not appear from the showing made, however, to be in such a desperate condition that the prospect of not being able to meet an interest payment coming shortly due, should tilt the scales in favor of a receivership.

(f) A note (or notes) for $150,000 in favor of Mrs. Cushman is outstanding and unpaid. This appears to represent a debt

owed not by the defendant but by one or two of its subsidiaries. At all events the payee is not pressing for payment and the item constitutes nothing in the way of a liability demanding payment in the usual course of business.

(g) Certain dividends have been declared but have not been paid "presumably," say the solicitors for the complainant, "because of a lack of funds with which to pay same." The evidence is silent as to why these dividends are unpaid. It will not do to appoint a receiver on a presumption concerning the reason for the non-payment.

The foregoing states all the facts which the complainant urges in support of his bill. They do not appeal to me as making out a case. That this corporation has been having some difficulties is apparent. It, however, appears to have large and valuable assets. Its New York subsidiaries are prosperous, going concerns and show substantial earnings. Even if the Chicago and Cleveland properties, which as before stated have thus far proved burdensome, cannot be brought to a paying basis, and they should have to be liquidated, the evidence gives reasonable ground to believe that the defendant would be called upon to pay out nothing on its guaranty of the first mortgage bonds, but that at the worst it would simply lose its investment. If so, the remaining New York properties would still remain to it with all their asset values and earning power. To precipitate it into a receivership at this time, before it has had a fair chance to adjust what appears to be only temporary troubles, would be an unwise use of the Chancellor's discretionary power, even if it be assumed that it is technically insolvent. Such assumption, however would be a highly questionable one, for grouping the defendant and all of its subsidiaries into one as though they enjoyed no separate corporate identity, it yet appears to me that, though its cash position is not so strong, it nevertheless has resources in the form of equities which may be reasonably expected to furnish it with means to solve its present needs if destructive measures such as a receivership are not visited upon it.

Some reliance was placed by the complainant on the views expressed by this court in *Manning v. Middle States Oil Corp.*, *supra*, in support of the present suit. In that case the defendant

was a holding company owning a large number of subsidiaries. The business of the parent and its constituents was managed as one. All moneys were dumped into a common pot and it was impossible to tell which companies in the group were creditors and which were debtors. A reading of the case will show the pronounced dissimilarity in point of facts between that one and this one. In the course of the opinion it was in substance said that if the parent was indebted to its subsidiaries and unable to pay them and if because of that fact it was technically insolvent, yet such insolvency ought not in the exercise of the Chancellor's discretion result in a receivership unless the subsidiaries were, by reason of the inability of the parent to discharge its obligations to them, themselves unable to meet their obligations. The language there used speaks of an extraordinary situation. No such situation exists here, for it is by no means clear that the debt of the parent to two of the New York subsidiaries has put them in a condition of insolvency. On the contrary they appear to be solvent. At all events their difficulties do not appear to be such as they are unable to work out of; and the defendant itself is not shown to have eaten its resources to the bone so that it holds out no hope of being able to pay its indebtedness to the wholly owned subsidiaries in sufficient amount to put them in position to meet their taxes.

Taking the case as the complainant's evidence shows it to be, I am impelled to the conclusion that the bill should be dismissed.

Decree accordingly.