(85 App. Div. 211.)

PEOPLE ex rel. MUTUAL TRUST CO. OF WESTCHESTER COUNTY v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. TAXATION—TRUST COMPANY—FRANCHISE TAX.

Laws 1901, p. 316, c. 132, § 187a, provides that every trust company shall pay to the state annually for the privilege of exercising its corporate franchise an annual tax equal to 1 per cent. on the amount of its capital stock, surplus, and undivided profits. Section 202 of the tax law was amended by the same act by providing that, in addition to exemptions from assessment and taxation upon its personal property for state purposes, every trust company paying the tax prescribed by section 187a should be exempt from taxation and assessment for all other purposes, and that the owner of stock of an incorporated trust company should not be taxed as an individual for such stock. Held, that the tax imposed by section 187a was for the privilege of exercising a corporate franchise, so that a trust company which had only been in business six days at the time the tax was assessed was liable for the full tax, and not merely for such proportion thereof as the six days bore to the entire year.

Certiorari by the people, on the relation of the Mutual Trust Company of Westchester County, against Nathan L. Miller, as Comptroller of the state of New York, to review the determination of respondent on the application of the relator for revision and readjustment of the annual state franchise tax imposed upon relator. Determination confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Parsons, Shepard & Ogden, for relator.
William H. Wood, Dep. Atty. Gen., for respondent.

HOUGHTON, J. The relator was organized as a trust company, and received from the Superintendent of Banks a certificate authorizing it to do business on the 6th day of June, 1901. On the 24th day of June, 1901, it commenced the transaction of business with a paid-up capital of $300,000 and a surplus of $60,000. On the 30th day of August following the Comptroller assessed the capital stock and surplus of the relator at $360,000, and imposed a tax of 1 per cent. thereon, pursuant to section 187a of the tax law (Laws 1901, p. 316, c. 132). Application was made by the relator for revision and resettlement of such tax, which was denied by the Comptroller, whereupon this proceeding was taken.

The position of the relator is that, it having been in business only six days prior to the fiscal year ending June 30, 1901, no tax could be imposed upon it for that year; or, if any tax could be imposed, it should be in such proportion as the six days in which it was doing business bore to the entire year. The Comptroller held that, the corporation being in existence during some portion of the year preceding June 30, 1901, and having the capital and surplus stated, he was not authorized to take into account fractional parts of the year in imposing the tax. Prior to 1901 trust companies were assessed under section 182 of the tax law (Laws 1896, p. 856, c. 908). That section provided that every corporation organized under the laws of the state should pay an annual tax of one-quarter of a mill for each one per centum of dividends amounting to 6 per cent. or more, and, if less than 6 per cent. was paid, then a different rate of tax; and, if no dividend at all was paid, the rate was 1½ mills upon each dollar of the appraised capital employed within the state, and the Comptroller was given the right to appraise the value of the stock. Under this provision it was held that the Comptroller was authorized to appraise a nondividend paying stock of a trust company at the market price, even though it exceeded the par value of the stock, and thus indirectly taxed the surplus, which was not expressly authorized by the statute. People ex rel. Colonial Trust Co. v. Morgan, 47 App. Div. 126, 62 N. Y. Supp. 191, affirmed in 162 N. Y. 634, 57 N. E. 1121, on the opinion of the court below. It is well known that stocks of many trust companies sell for many times their par value. With the evident purpose of establishing a fixed basis upon which trust companies might be taxed, the Legislature, in 1901, amended the law by adding the provision embraced in section 187a (Laws 1901, p. 316, c. 132), which provides as follows:

"Sec. 187a. Franchise tax on trust companies.—Every trust company incorporated under the laws of this state, shall pay to the state annually for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity, an annual tax which shall be equal to one per centum on the amount of its capital stock, surplus and undivided profits."

Thus the market value of the capital stock of a trust company was eliminated, and the amount of its actual capital, surplus, and undivided profits fixed as the basis for taxation, and the rate was made uniform. By the same act which thus amended the provisions for the taxation of trust companies, section 202 of the tax law was amended by providing that, in addition to the trust company being exempt from assessment and taxation upon its personal property for state purposes, every trust company paying the tax prescribed by section 187a should be exempt from taxation and assessment for all other purposes, and, in addition, that the owner and holder of stock of an incorporated trust company liable to taxation under the act should not be taxed as an individual for such stock. Laws 1901, p. 316, c. 132. It seems to us that these provisions are very significant in determining the character of the tax which the Legislature intended to impose by the enactment of section 187a. A suitable and fixed basis of assessment was provided, with a higher rate of taxation, in exchange for which broader exemptions were granted relieving trust companies not only from the payment of taxes for state purposes, but for all other purposes, and relieving the holder of the stock from individual taxation therefor; thus treating him differently from the stockholder of a bank, who, by sections 24 and 25 of the tax law (Laws 1896, p. 806, c. 908), is compelled to pay a tax for all purposes on the value of his shares. In addition to this, the language of the section imports that the tax provided for is one demanded by the state for corporate life. The tax is declared to be for the privilege of exercising a corporate franchise or carrying on its business in such corporate capacity. The wording of the act is almost in the language of the definition of a corporate franchise as defined in Home Insurance Company v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025, affirming 92 N. Y. 328, where it is said that the phrase "corporate franchise or business," as used in the tax law, "means the right or privilege of being a corporation; that is, doing business in a corporate capacity." If this interpretation be placed upon the law under consideration, it makes no difference whether the trust company had been in business six days or six months or a year when the moment for imposing the tax arrived. It must pay its tax for its existence, however brief its existence may have been.

It is claimed that the words "annually" and "annual," as used in the section, show that the Legislature did not intend that a trust company should pay for any period of existence less than a year. Those terms, as used in the tax statute, were under consideration in the People v. The Spring Valley Hydraulic Gold Co., 92 N. Y. 383. In that case an act was passed June 1, 1880, taxing certain dividend paying and nondividend paying corporations, and requiring such corporations "annually on or before the 15th day of November" to make a report to the Comptroller, setting forth the condition of the cor-

poration "as of the first day of November during the year ending as aforesaid," and provided that the tax should be paid annually to the state in each year before the 15th of January following. Action was brought against the defendant corporation to compel it to pay this tax. It claimed it was not liable, because it was incorporated in February, 1880, and therefore had not been in existence a year on the first of November following, and could make no annual report, and was liable for no annual tax. In delivering the opinion of the court, Andrews, J., says:

"It is contended that the act does not contemplate that corporations shall make a report under the first section until the year succeeding that in which it was passed, to wit, November, 1881, and that no tax was required to be paid under the provisions of the third section until after that time. This contention rests mainly upon the supposed implication arising from the word 'annually' in the first and third sections, and from the requirement that the report to be made under the first section is to state the dividends declared during the year prior thereto, or, in case of nondividend corporations, that the capital stock shall be valued at not less than the average price which said stock sold for during the year. It is said that, the act having been passed in June, 1880, a report made in November, 1880, is not an annual report, and that the requirement that the report shall state the dividends declared during the year before the report is made, and that when a valuation of the capital stock is to be made it is to be at a sum not less than the average price for which the stock sold during the same period, indicates that it was the intention of the Legislature to allow corporations at least a year after the passage of the act to ascertain the value of their franchise before subjecting them to taxation under the new system. * * * By the construction claimed by the defendant no tax would be payable until January, 1882, nineteen months after the passage of the act, and this would not be a payment 'annually,' as provided in the third section. The claim that it was not intended to tax corporations which had not been in existence a year at the time of the passage of the act is not a reasonable one. * * * It could not be claimed that a corporation organized in 1881, or in any year after the passage of the act, would be exempted from making a report the succeeding November, or from paying a tax in the January following, on the ground that it had not been in existence for the period of a year."

The relator insists that this court, in People ex rel. Brooklyn R. T. Co. v. Morgan, 57 App. Div. 335, 68 N. Y. Supp. 21, has laid down a rule which compels the interpretation of the present statute according to its contention. No such question was decided in that case as is now under consideration. Section 182 of the tax law was there held to impose a tax upon the appraised value of capital employed by the corporation within the state as averaged throughout the year, where the amount of capital stock issued and its value varied from time to time. The People v. The Spring Valley Hydraulic Gold Co., 92 N. Y. 383, cited above, was held not to apply to the principle there under consideration, because, as stated in the opinion, the subject of taxation was fixed arbitrarily in that case, and could not be departed from, and that under section 182 of the tax law the basis was to be determined according to the actual employment of capital during the preceding year. The subject of taxation in section 187a of the tax law is fixcd arbitrarily as the amount of the capital stock, surplus, and undivided profits of the trust company. No averaging or appraising is allowed. Whether the capital stock is below par or above par makes no difference. If there be a surplus,.

it is certain. If profits have not been divided, the earnings remain as undivided profits.

Our conclusion is that the determination of the Comptroller, however great a hardship it may work in the present case, was right, and that his determination should be confirmed.

Determination of the Comptroller confirmed, with $50 costs and disbursements. All concur.