THE PEOPLE OF THE STATE OF NEW YORK ex rel. GOODWIN SAND AND GRAVEL COMPANY, Relator, v. WALTER W. LAW, JR., and Another, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 9, 1924.

Taxation — franchise tax — exemption on ground that relator was holding corporation — relator was organized to mine sand and gravel but transferred its property to another corporation for stock therein and discontinued its business — relator's income during year 1918 was principally from stocks and bonds — purpose of organization not determinative of right to exemption under Tax Law, § 210 — relator is exempt from taxation on ground that it is holding corporation.

The purpose for which a corporation is organized is not determinative of its right to exemption from a franchise tax on the ground that it is a holding corporation whose principal income is derived from holding the stocks and bonds of other corporations as provided by section 210 of the Tax Law.

**568** People ex rel. Goodwin Sand & Gravel Co. *v.* Law.

Third Department, January, 1924. [Vol. 207

Accordingly, the relator which was organized for the purpose of mining sand and gravel is exempt under said section for the year 1918, since it appears that prior thereto it had transferred its mining property and business to another corporation in exchange for stock in the purchasing corporation; that its income for the year 1918 was derived from securities owned by it other than the stock in the purchasing corporation, from interest on money loaned, and the rental of undeveloped real estate which it owned.

Certiorari issued out of the Supreme Court (after the taking effect of the Civil Practice Act)* and attested on the 15th day of January, 1923, directed to Walter W. Law, Jr., and another, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing a tax against the relator for the tax year beginning the 1st day of November, 1919, under article 9-A of the Tax Law.

*Lee, Smyth, Aron & Wise* [*J. Harlin O'Connell* of counsel], for the relator.

*Carl Sherman, Attorney-General* [*C. T. Dawes* of counsel], for the respondents.

McCann, J.:

The relator applied to the State Tax Commission for a revision and resettlement of a tax assessed against it under article 9-A of the Tax Law for the taxable year beginning November 1, 1919, based upon its business for the year ending December 31, 1918, on the ground that such tax was illegally and erroneously assessed against relator because of the fact that the latter was exempt from taxation under section 210 of article 9-A of the Tax Law as the same was in force and effect at that time. (See Tax Law, § 210, added by Laws of 1917, chap. 726, as amd. by Laws of 1918, chap. 417.) The application for review and resettlement of said tax was denied by the State Tax Commission and the tax was assessed at $3,670.20 and was paid and accepted without prejudice to the right of the relator to review the assessment. The matter is now before this court in certiorari proceedings. The sole question for determination is whether or not the relator is exempt under the said section, which at the time in question read as follows: " Corporations exempted from article. Corporations wholly engaged in the purchase, sale and holding of real estate for themselves, holding corporations whose principal income is derived from holding the stocks and bonds of other corporations and corporations liable to a tax under sections one hundred and eighty-four to one hundred and eighty-nine inclusive of this chapter, banks,

---

* See Civ. Prac. Act, § 1283, as amd. by Laws of 1922, chap. 355.— [Rep.

savings banks, institutions for savings, title guaranty, insurance or surety corporations shall be exempt from the payment of the taxes prescribed by this article."

The determination of this case turns upon the meaning of the phrase "holding corporations whose principal income is derived from holding the stocks and bonds of other corporations."

In 1908 the Goodwin Sand and Gravel Company, the relator herein, was organized under the laws of the State of Maine and in the same year began the transaction of its business in the State of New York. It never did any business in the State of Maine but maintained a statutory office there. The company was organized for the purpose of mining and selling gravel and sand and kindred business. It continued actively in such business until about the year 1915 or 1916 when it united or combined with the Gallagher Sand and Gravel Company and formed a corporation known as the Goodwin-Gallagher Sand and Gravel Company. Upon the organization of the latter company, the relator transferred and assigned to the new corporation all of its materials and equipment, including boats, scows, tugs, engines and the good will of the corporation. The Gallagher Sand and Gravel Company likewise transferred to the new corporation a lease on certain property on Long Island. Each of the old companies received in exchange for the property transferred about $1,000,000 worth of stock in the new corporation. At the time of the organization of the Goodwin-Gallagher Sand and Gravel Company, the relator owned but did not transfer to the new company a tract of land on Long Island, which included farm land, none of which was developed or improved, and also certain lands which had been used from time to time for the mining of sand. The relator at that time also owned a large block of stocks and bonds which likewise were not transferred to the new company. These stocks and bonds had been donated to the relator by its president, who, together with the members of his family, controlled the stock of the relator corporation. The par value of the stocks and bonds held by the relator which were not transferred to the new corporation was $1,675,559. The only income received by the relator during the year 1918 was from the securities above mentioned, amounting in the aggregate to $100,844.22, certain interest on money loaned, amounting to $18,916.98, and a small amount of rental from the relator's real estate above mentioned, the aggregate of which was about $1,500. The Goodwin-Gallagher Sand and Gravel Company paid no dividends and the relator received no income from its stock in such corporation during the year 1918. The foregoing statement of facts is undis-

puted.   It is also undisputed that the principal income of the
relator was derived from stocks and bonds of other corporations.
The only question remaining is the meaning of the word " holding "
as used in the statute.   The language of section 210 of the Tax Law
has been amended since the year 1918 and now provides for the
exemption of corporations " whose *sole* business consists of holding
the stocks of other corporations for the purpose of controlling the
management and affairs of such other corporations   *   *   *."
(See Laws of 1920, chap. 640, amdg. said § 210, in effect May 10,
1920.   See, also, Laws of 1923, chap. 328, amdg. said § 210.)

The contention of the respondents is that the term " holding
corporation " is definitely understood in law, in business and as
a matter of common knowledge to be one whose " designed purpose
and whose activity consists in holding the stocks and  bonds of
other corporations for the purpose of controlling the affairs of
those corporations."   It cannot be said of the relator in this case
that it was organized for the purpose of holding the stocks and
bonds of other corporations or for the purpose of controlling them.
In all probability, no corporation would be the holder of bonds
of another corporation for the purpose of controlling its affairs.
In order to have a successful control of a corporation it would
be necessary to own its stock.   It appears that the relator was
organized as a business corporation.   The specific purpose of its
organization was that of mining and selling sand and gravel.   During
the year in question, it was engaged in no business.   It received
no income, except a small amount of rent from its real estate and
a very large percentage of it from investments in stocks and bonds
of other companies.

It conducted no commercial business, was not engaged in manu-
facturing or trading and certainly does not come within the definition
quoted by respondents upon their brief, that the real purpose of
a  holding  corporation  is  " to  form  and  foster  monopolies and
combinations."   It does not appear from the record that there
was any prohibition against the relator's purchasing, holding or
selling stocks or bonds of other corporations; therefore, it is assumed
that it had legal authority so to do.   The purposes for which
the corporation was organized are immaterial.   The question for
decision is the nature of its business transacted during the year
1918 and this would be true even if the corporation should during
the next or any subsequent year change the nature of its business
from that of a holding corporation to a business of a manufacturing,
mercantile or commercial nature, in which case a different statute
would apply to the taxation of its assets or income for that year.
There is no definition in the statute of a holding corporation and

while it may be true that the respondents are correct in the claim that in common parlance such a corporation is regarded as one which is organized and conducted for the purpose of controlling the activities of other corporations, in the absence of any statutory definition, we must rely for our interpretation upon the language of the statute itself and from the other sections of the Tax Law. In so construing it, we believe that this relator is exempt from taxation under the provisions of section 210 of article 9-A of the Tax Law, as amended in 1918 and in effect for the tax year beginning November 1, 1919.

The determination of the State Tax Commission should be annulled and the proceeding should be remitted for revision of the assessment, in accordance with the views above expressed, with fifty dollars costs and disbursements against the respondents.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the State Tax Commission.