In the Matter of the Claim of TILLIE BROWN, Respondent, against
NATHAN ROSEN and Another, Doing Business as SUNLIGHT
ELECTRIC COMPANY, and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 11, 1926.

Workmen's compensation — relationship — claimant's intestate left
defendant's employ — claimant contends that day before accident
intestate re-entered employ having been hired by alleged representative
of defendant — said representative had power to employ but evidence
does not show contract — at time of accident intestate was on auto-
mobile trip to inspect proposed territory in which he might act as
salesman — claim filed on last day of year after death was filed in time.

It was the contention of the claimant that her intestate, who had previously left
the employ of defendant employer, entered into a contract to re-enter the
employ of said employer on the day before the accident. The claimant's
intestate was killed while on an automobile trip which he was taking on a
Sunday through new territory that might possibly be assigned to him. While
the evidence shows that a representative of the defendant employer had the
power to enter into a contract of employment with the claimant's intestate,
it does not show that such a contract was made. There was no proof as to the
terms of the contract of employment either as to the time thereof or the
compensation therefor.

The claim for compensation was filed in time, since it appears that it was filed
on the last day of the year after the death of claimant's intestate.

H. T. KELLOGG, J., dissents.

APPEAL by Nathan Rosen and others from an award of the State
Industrial Board, made on the 23d day of February, 1926.

*Robert H. Woody* [*Everett F. Warrington* and *Herbert F. Hastings,
Jr.,* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-
General,* of counsel], and *Alexander A. Tausky, Counsel, State
Department of Labor,* for the respondents.

McCANN, J. The employers were a copartnership doing business
under the name of the Sunlight Electric Company. They manu-
factured and sold electrical fixtures, having a place of business in
New York city. They employed salesmen, among them being the
decedent, who worked on a commission. Decedent was killed in
an automobile accident March 23, 1924. The appellants object
to the award made to the widow and daughter of the decedent on
the ground that there is no evidence to sustain the finding that the
decedent was an employee of the Sunlight Electric Company at
the time he sustained the accident resulting in his death, and

furthermore, assuming that he was in such employment, the evidence shows that the accident did not arise out of and in the course of his employment. It is also claimed that the claim for compensation was not filed within a year after the date of the accident. The accident was the result of an automobile in which decedent was riding going over an embankment while decedent was going from Pittsburg to Butler, Penn.

On March 1, 1924, decedent went to New York and told the partners by whom he was then employed that business in and about Pittsburg was bad; that it was difficult for him to make any sales; that he wanted authority from his employers to go into the State of Ohio to sell goods. This consent was not given. They did, however, give permission to him to close up a few orders or sales in process of negotiation, the permission being to the extent that he might continue negotiations and, if sales were made, deliver the orders. Decedent made a few sales under this arrangement and on March tenth a check was sent to him which presumably was in payment for his commissions on sales after March first. He then left the employ of the Sunlight Electric Company and went to work for the Edison Unit Sales Company of Ohio. It is conceded that he was in the employ of the latter company up to and including the closing of business on Friday, March 21, 1924. Claimant urges that decedent returned to work for the Sunlight Company on Friday, March twenty first, or Saturday, March twenty-second. Both employers testified positively that decedent never re-entered their employ and that they had no knowledge that he intended to do so. Contracts of sales made by him in behalf of the Edison Unit Sales Company were offered in evidence covering various dates up to and including March 21, 1924. These prove (and it is stipulated) that decedent was in the employ of the Edison Unit Sales Company as late as March twenty-first as he was actively engaged in procuring orders for them up to that time. A re-employment of decedent by the Sunlight Company is sought to be established by a contract alleged to have been made with one Ike Karlan. The authority of Karlan to make such contract is the main question to be determined. Claimant insists that Karlan was the district manager of said Sunlight Company located in Pittsburg with authority to hire and discharge employees. One of the employers, Rosen, testified that Karlan was not the manager; that he was only there for the purpose of watching merchandise; that he had no authority; that he was the same as a salesman; that he could not hire anybody; that he only took charge of the merchandise so that no one could steal it; that it was his duty to sell lamps the same as other salesmen and take care that the lamps should

not get lost and that " orders were good; " he was not authorized to hire or discharge or pay employees; that all payments were made by check from the New York office; that they had no office in Pittsburg except a place to keep their stock. He did, however, have authority to collect money. Karlan testified that his work in Pittsburg was to take charge of the men and take charge of the merchandise. He also testified: " I used to give out the goods to the boys to go out and sell " in order to collect. As to whether he ever hired any men he testified: " If I did I let the concern know. * * * There was no objection from the concern if I took a man in to work, if I let them know. * * * I took one man [in Pittsburg] and I wrote the concern, ' I am employing a likely man.' " " My duties in Pittsburg were just to give out to the salesmen merchandise, and take care of the goods and when collections came in to ship the money to the concern in New York, and see that the goods were taken care of and the sales made properly, and also go out and sell myself to make a living. *That covered my entire employment.*" A telegram was introduced in evidence dated March 16, 1924, sent from Brooklyn, N. Y., addressed to the decedent, in care of Sunlight Electric Company at Pittsburg, which read as follows:

" Have a check for you. Will bring it Friday morning. Advise you to go out for business. You have seventeen lamps and if you get more orders you will be able to hand them Friday and Saturday. Answer by letter immediately. I must be in court Thursday.

" I. KARLAN."

On March twentieth Karlan wrote to decedent as follows:

" Your letter on hand. Was glad to hear from you. I am sorry your letter was a little late as I had *a check with me for you* from Mr. Rosen and I mailed it *back because I did not know where you are.* You also wrote me that you intend to go back to New York. When you will come to Pittsburg will be able to explain to you all about New York and something else. I am sorry to hear that business is striking out there. George, you could do a lot more out here. I have a lot to say but could not express myself in writing.

" (Signed)   IKE."

Karlan testified that he saw Brown early on Friday morning, March twenty-first, at Pittsburg; that he did not talk any business with him; that he also saw Brown on the following morning about ten o'clock when they met at the hotel in Pittsburg. He testified that he did not remember sending the telegram of March sixteenth from Brooklyn and does not remember what it referred to. He

Third Department, November, 1926.    [Vol. 218

admitted later, however, that he sent it. Karlan's memory was decidedly defective. He testified that he gave Brown some money on Saturday and that the amount was thirty-three dollars; that he does not remember what kind of money it was; he said he had a check for fifty dollars for him and he gave him thirty-three dollars in cash out of his own money and that was all that he had; that the check was sent from the Sunlight Electric Company. When asked if the check was for back lamps sold he said he did not remember. Furthermore he testified that he had forgotten as to whether Brown had said he was coming back to work for the Sunlight Company and wanted an advancement; he did not remember whether or not he sent to the Sunlight Company for a check for fifty dollars for Brown; he would not say whether Brown went out to Butler, Penn., to work to develop new territory or whether he went out just to look over the territory. He testified that Butler, Penn., had never been worked before. Mrs. Brown, the widow of decedent, testified that Karlan called on her after her husband's death and told her about giving her husband thirty-three dollars and spoke about the check but did not say what the money was for. Upon being recalled Karlan testified that he did not know why Brown was on the road on Sunday the day that he drove to Butler, Penn., on which date the accident occurred. He would not say as to whether the fifty dollars was a loan or advanced for salary. He did not remember whether the thirty-three dollars he advanced from his own pocket out of the fifty dollars was ever paid back to him by the Sunlight Company; he did not remember as to whether he ever asked the company for it. In a letter written to Mrs. Brown on March twenty-seventh Karlan stated that Mr. Brown came to see him on Saturday night from Columbus, O., and stated that he desired to go back to work for the Sunlight Company in the Pittsburg district; that he left at a late hour Saturday night but returned to see him on Sunday morning; that he spoke about going into Butler county to look over the territory over Sunday so that " if he would find everything favorable he would not lose any time on Monday in his work." This contradicts his former statement that he did not talk business with Brown either on Friday or Saturday. Pictures and printed contracts, the property of the Sunlight Company, were found on Mr. Brown's person. It is claimed that these are evidence of the fact that he was then in the employ of said company. Max James, a relative of Mrs. Brown, testified that Karlan told him that he had seen Mr. Brown three times on Saturday night previous to the accident; that Brown " discussed with him about coming back to work for the Sunlight Electric Com-

pany '' and that Brown told Karlan at that time he was going out to Butler to look over the territory and asked Karlan to go with him but that Karlan declined.  It, therefore, appears that proof as to the authority of Karlan to re-employ Brown is very unsatisfactory; I am of the opinion, however, that there is enough evidence to establish the fact that Karlan's authority extended far enough to permit him to engage the services of Brown.  I am not satisfied that such services were actually engaged.  The testimony of Karlan is not entitled to any credit whatever.  He has contradicted himself on many points.  His excuse for lack of memory is not satisfactory, but granting that his testimony is true, I do not find any evidence which shows the actual employment of Brown by Karlan.  The most that is shown is that there was a conversation between them Saturday night and in view of the fact that Butler county had never been worked by the Sunlight Electric Company it is reasonable to suppose that neither Karlan nor Brown knew the conditions existing there and I am satisfied that Brown was taking advantage of the day following being Sunday to drive out to Butler and look over the territory so that if the territory looked satisfactory to him he would go into the employment of the Sunlight Company again; otherwise I see no reason why he should have driven to Butler; he could not have transacted any great amount of business on Sunday, either in actual sales or in looking over the territory, and it must have been for the purpose of taking a general survey of the town and perhaps discuss with some people the question of the possibilities for sales there.  The latter theory seems more probable to me than the fact that he was going to Butler to make actual sales.

I, therefore, conclude that Brown had not yet entered into any contract for re-employment.  There is no proof to show for what length of time, on what terms, or any of the conditions necessary to constitute an actual contract for employment.  There certainly is not sufficient proof of details to establish a new contract of employment.  (*Kackel* v. *Serviss*, 180 App. Div. 54.)  Much stress is placed upon the telegram sent by Karlan on March sixteenth to Brown in which Karlan states that he '' has a check '' for Brown and will bring it to him on Friday morning.  In this telegram he also advised Brown to go out for business and asked for an answer by letter.  It is clear, therefore, that no contract had been made up to that time and the most that could be said is that Karlan wanted to make one.  On March twentieth Karlan in a letter to Brown says that he had '' mailed it [the check] back.''  It appears that later Karlan advanced Brown thirty-three dollars out of his own pocket (presumably on such check which Rosen

had testified " was coming to him " [Brown]). Another question raised is whether or not if the relation of employer and employee existed between decedent and the Sunlight Electric Company, the accident which resulted in the death of decedent arose out of and during the course of his employment. This question has already been answered. The question has also been raised as to whether the claim for compensation was filed within a year after the death of the decedent. The testimony shows that such claim was filed on the last day of the year after the death, as required by the Workmen's Compensation Law (§ 28; since amd. by Laws of 1925, chap. 658), as shown by the receipt of the registered letter containing such notice.

I recommend that the award of the Industrial Board be reversed and the claim dismissed, with costs against the State Industrial Board.

All concur, except H. T. Kellogg, J., dissenting.

Award reversed and claim dismissed, with costs against the State Industrial Board.