## AMERICAN INV. CORPORATION v. STATE TAX COMMISSION et al.

No. 6312. Decided December 19, 1941. (120 P. 2d 331.)

Rehearing Denied February 25, 1942.

See 23 R. C. L., 1253; 26 R. C. L., 163; 61 C. J. Taxation, sec. 241.

*Devine, Howell & Stine* and *Neil R. Olmstead,* all of Ogden, for plaintiff.

*Richard L. Bird, Jr., Alvin I. Smith,* and *Grant A. Brown,* all of Salt Lake City, for defendants.

LARSON, Justice.

This is a proceeding to review a decision of the State Tax Commission of Utah, hereinafter called the commission, directing plaintiff to pay a deficiency upon its corporation franchise tax for the year 1937. There is no dispute as to the facts. The plaintiff is a Nevada corporation, authorized to do business in Utah. Most of its stock was owned, and

it was dominated and controlled by men residing at Ogden, Utah. During 1937 the books of the plaintiff company were kept at Ogden; directors meetings were held there; its bank account was kept there, and such disbursements as it had were made at Ogden. It owned the controlling stock in the Idaho Bank and Trust Company, an Idaho corporation engaged in the banking business at Pocatello, Idaho, and also in the Commercial Security Bank of Ogden, a Utah banking corporation. It also held some stock in the Ohio Oil Company, an Ohio corporation having its principal place of business at Findlay, Ohio; and some stock in the Socony-Vacuum Oil Company, a New York corporation, with its principal office at New York City. The stock in the last two corporations was purchased on the New York Stock Exchange, New York City, through J. A. Hogle & Company, a member of the Exchange. This stock was sold in 1937 on the New York Exchange through the same member of the exchange.

In its tax return to the commission, filed for the purpose of fixing the amount, if any, of its franchise tax to the state, the plaintiff deducted from its income for 1937 the following sums: $125 received as dividends on the Socony-Vacuum Oil stock; $200 received as dividends from the Ohio Oil stock, and $6,016.60 dividends on the stock in the Idaho Bank & Trust Co. It also deducted $4,424.30 received from the sale of the Socony-Vacuum stock, and $299.40 received from the sale of the Ohio Oil stock. The commission disallowed all these deductions and ordered payment of a franchise tax computed thereon. The plaintiff brings certiorari contending: (1) That it is a "holding company" and therefore exempt under the provisions of subdivision (16) of Section 80-13-5, R. S. U. 1933. (2) That even though plaintiff were not exempt, the dividends received from the Idaho Bank were not receipts from business done in Utah and are therefore deductible. (3) The money received from the sale of the stock was the result of business done in New York, and therefore should not be included in receipts on which the tax is to be computed. We note them in order.

(1) The statute, Section 80-13-3, R. S. U. 1933, provides that every bank or corporation, other than a national bank or corporation exempted in Section 80-13-5, shall annually pay to the State for the privilege of exercising its corporate franchise or doing business in the state, a tax based upon its net income allocated to the state, *California Packing Corporation* v. *State Tax Commission,* 97 Utah 367, 93 P. 2d 463. The tax imposed by this section is not a property tax, nor an organization tax, but a tax on the privilege of exercising the corporate franchise. *People* v. *Miller,* 177 N. Y. 51, 69 N. E. 124, reversing 85 App. Div. 211, 83 N. Y. S. 185; *People* v. *Knight,* 174 N. Y. 475, 67 N. E. 65, 63 L. R. A. 87, reversing 67 App. Div. 333, 73 N. Y. S. 745; *People* v. *Roberts,* 116 App. Div. 30, 101 N. Y. S. 184. The exemption section, 80-13-5, reads:

"The following corporations are exempt from the provisions of this chapter, to wit:"

Then follows 16 subdivisions defining the various types of corporations exempt, number (16) reading:

"Corporations whose sole business consists of holding the stock of other corporations for the purpose of controlling the management of affairs of such other corporations, if such other corporations make return under this chapter."

We held in the case of *First Security Corporation* v. *Tax Commission,* 91 Utah 101, 63 P. 2d 1062, that the requirement that the "other corporations" make return under the chapter, applied only to such corporations as did business in the State of Utah, and therefore a holding company was not taxable on its receipts from stock it held in companies which did no business in the State of Utah.

That plaintiff was a holding corporation engaged in the business of holding stock in other corporations for the purpose of controlling the management of affairs of such other corporations is expressly found as a fact by the commission. But that body also found that because plaintiff had purchased, and in 1937 sold the stock in the

Socony-Vacuum, and in the Ohio Oil companies, its sole business was not that of a holding company, and it therefore was not exempt. This brings us to the consideration of the meaning and significance of the expression "corporations whose sole business consists of" in the exemption provision quoted above. Is that matter to be determined by the articles of incorporation, by the purposes for which it was organized, by the things it is authorized to do by the law of its creation and charter, by the business it is authorized to do in this state by the very franchise for which the commission seeks to collect a fee, or is it to be determined by what the company actually does in the state? If a holding corporation wrongfully and unlawfully does business in the state, does business it is not licensed or franchised to do, does that take it out of the exemption clause? It is evident that the question must be determined by the articles of incorporation, by the business it is licensed or permitted by its franchise to do. This is a franchise tax, a tax on the right or privilege of doing business in the state. What business? Why, lawful business; business it may do without violating the law; the business it may do under the franchise for which it pays the tax. The state cannot collect a franchise tax unless it gives a franchise therefor. And it cannot be said that the state intended to collect franchise taxes for the right to do business unlawfully. A franchise for engaging in a certain business makes the doing or carrying on of that business lawful, and engaging in the business without a franchise is unlawful. See Sections 18-8-1 and 18-8-4, R. S. U. 1933, providing a penalty up to $5,000. The exemption section of the Franchise Tax Law lists 16 groups or types of corporations that are exempt. The gist of the section is to exempt corporations which may be characterized by these features: They are organized and operated not for profit but for the benefits of their members, and they cannot under their articles engage in the trade, commerce or business in the state. Since the tax is upon the franchise or the privilege of doing business in the state it matters

not as to the extent to which the franchise is exercised. It is still taxable if not exercised, or if only partially exercised. The privilege of exercising corporate franchise is that for which the state requires this annual tax. The tax law does not make the payment of a tax for these franchises dependent upon their exercise. The mere right or privilege of exercising them, possessed by the corporation, subjects it to the tax. *Cayuga, etc., R. Co.* v. *Delaware, etc., R. Co.,* 215 App. Div. 429, 213 N. Y. S. 586. The amount of the tax is computed according to the extent to which the franchise is exercised, as measured by the net income derived from such use. The test therefore as to whether a corporation is exempt is what business it may engage in under its franchise. If under its franchise, which is coextensive with its articles, it may not engage in trade and commerce, and business for a profit in the state, it is exempt from the tax. If on the other hand under its franchise it may engage in trade, commerce, and business in the state for a profit, it is subject to the tax for that privilege. It follows therefore that a corporation which holds stock in other corporations for the purpose of managing their affairs, and which under its franchise from the state may for profit lawfully engage in business in the state, other than the business incident to its "holding" business is subject to the tax, but such a corporation, limited by its franchise to doing in the state the business incidental to its "holding business" is exempt from the franchise tax provided that its Utah subsidiaries make tax returns under the chapter. *People ex rel. Butterick Co.* v. *Gilchrist,* 213 App. Div. 533, 211 N. Y. S. 75; *People* v. *Kelsey,* 101 App. Div. 205, 91 N. Y. S. 709; *People* v. *Roberts,* supra; *Adjustmnt Bureau* v. *Conley,* 44 Idaho 148, 255 P. 414. The record before us is not clear as to whether the plaintiff was authorized under its franchise to engage in any business in Utah other than that incident to its holding company business. The tax return filed by plaintiff lists its business as "Bank Holding Co."; it lists all its assets as "stocks of domestic (U. S.) corporations";

its liabilities consist of $12,000 in notes payable; $5,275.76 as undivided profits; and $254,989.82 in stocks. On the questionnaire prepared by the commission and filled out by the plaintiff is the following:

"Purpose for which organized: To hold the stock of other corporations for the purpose of controlling the management of the affairs of such corporations, if such other corporations make return under this chapter. * * * The income consists of dividends on corporation stock. * * * The objects and purposes for which this corporation is formed are: To acquire and hold shares, stocks, debentures, Debenture stock, bonds, obligations, and securities issued by any company. To take part in the management, supervision, or control of the business or operations of such company. Generally to carry on business as financiers, and to undertake and carry out all such operations and transactions as an individual capitalist may lawfully undertake and do."

The articles of incorporation are not in evidence but the foregoing quotation is plaintiff's own declaration of what it is legally authorized to do. Clearly many powers and privileges therein mentioned are not within "the sole business of holding stock for purpose of control and management, etc." *People ex rel. Goodwin Sand & Gravel Co.* v. *Law et al.,* 207 App. Div. 567, 202 N. Y. S. 558. Plaintiff is not within the exemption and is therefore subject to paying a franchise tax.

If it be contended that what the company actually does in the state, rather than what its articles and franchise authorize it to do, determines whether or not it is within the exemption then plaintiff would be exempt from the tax. The commission having found the company was a holding company, the incidental transaction in these oil stocks does not on the record before us show the company did any other business in Utah so as to take it out of the exemption extended to holding companies. Such isolated transactions do not constitute doing business in the state. A good statement of a holding company is found in *Kenny* v. *Allerton Corp.,* 17 Del. Ch. 219, page 221, 151 A. 257; *State ex rel. City of St. Louis* v. *Public Service Commission,* 335 Mo. 448, 73 S.

W. 2d 393; *Cannon Mfg. Co.* v. *Cudahy Pkg. Co.*, 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634.

"The condition of doing business in this state, within Tax Law implies that the foreign corporation is accomplishing acts and activities within the state which the state might reasonably and with ordinary interstate comity interdict or prevent, and the doing of which was a privilege which required governmental consent, supervision, and control, and which necessitated or sought governmental opportunity and protection, to be compensated or balanced by contributions, through taxation, to the burden of government. Where foreign corporation had no property in the state other than bonds and note deposited with trust company as trustee and balance on bank account, and confined its operations in the state to collection and distribution to its stockholders of income from stock and obligations of other foreign corporations, it was not required to pay license fee under Tax Law, § 181, or franchise tax under section 182, since its activities in the state were confined to management of internal affairs as distinguished from maintenance of organization for profit and gain, and could as effectively been done in other state, for which reason it did not do 'business in this state' or 'employ capital in this state' within the Tax Law. *People ex rel. Manila Electric R. & Lighting Corporation* v. *Knapp*, 229 N. Y. 502, 128 N. E. 892, 894." 5 Words and Phrases, Perm. Ed., page 1035.

"Where corporation was organized for no other purpose than to effectually carry out by agreement and by stock ownership the control of companies whose stock it held, the corporation's temporary investment of money in miscellaneous marketable securities pending time when money would be required to carry out obligations of contract for purchase of additional stock of another company did not constitute 'doing business' and did not render corporation subject to franchise tax as an 'investment company' rather than as a 'holding company.' * * * *People ex rel. General Alliance Corporation* v. *State Tax Commission*, 253 App. Div. 413, 2 N. Y. S. 2d 994, 998, 999." 13 Words and Phrases, Perm. Ed., page 162.

"Incidental activities of holding company, such as paying taxes and voting capital stock, held not 'doing business.' * * * *Argonaut Consol. Mining Co.* v. *Anderson*, D. C. N. Y., 42 F. 2d 219, 221." 13 Words and Phrases, Perm. Ed., page 161.

"A finding of the State Tax Commission that for the taxable years 1906-1916 a domestic corporation was liable for a franchise tax under this section, which at that time included the prerequisite to taxation of doing business in this state, on the ground that such corporation was doing business within the state was held to be improper where

it appeared that, though it was organized to manufacture and sell, its [sole] assets consisted of stocks and bonds of subsidiary corporations and that its [sole] income was from dividends on the securities so held. Nor did the indorsement of notes by the corporation for its subsidiaries constitute doing business within the meaning of the statute. *People ex rel. Butterick Co.* v. *Gilchrist* (1925) 213 App. Div. 533, 211 N. Y. S. 75." McKinney's Consolidated Laws of New York Annotated, c. 60, Book 59, Tax Law, § 182, note page 382.

## And from page 386 of the same volume we quote:

"A foreign corporation whose assets are all invested in the stock of a domestic corporation cannot be considered as doing business in this state where it is engaged in no independent business. *People* v. *Kelsey* (1905) 101 App. Div. 205, 91 N. Y. S. 709.

"A foreign corporation having an office within this state where its dividends are disbursed, all of whose capital is invested in the stock of a foreign corporation doing no business in this state, and the only money within the state being profits from such investment, is not taxable as it employs no capital within the state. *People* v. *Roberts* (1897) 154 N. Y. 1, 47 N. E. 974."

For a good discussion of this question see *People ex rel. General Alliance Corporation* v. *State Tax Commission,* supra [253 App. Div. 413, 2 N. Y. S. 2d 998], from which we quote:

"The reports of the relator to the tax commission showed that the relator had sold holdings of its company, the preferred stock in Sterling Securities Corporation, its holding of stock in the United Corporation; and had purchased stock of the Atlantic Coast Line Company, the Chatham Phenix Allied Corporation, the Chatham Phenix National Bank & Trust Company, the Protective Indemnity Corporation, and the United Biscuit Company of America, and additional shares of the Consolidated Gas Company of New York, the National Dairy Products Corporation, and the United British Insurance Company.

"So far as the record shows, market conditions may have been responsible for this. There is nothing in the record to indicate that these stocks were sold for the purpose of doing business, but were stocks that were held as temporary investments pending the time when the money would be required to carry out the obligations of the contract entered into."

In another case the New York Court used language very apropos the situation here. In *People ex rel. Goodwin Sand & Gravel Co.* v. *Law,* supra [207 App. Div. 567, 202 N. Y. S. 560], it said:

"There is no definition in the statute of a holding corporation, and while it may be true that the respondents are correct in the claim that in common parlance such a corporation is regarded as one which is organized and conducted for the purpose of controlling the activities of other corporations, in the absence of any statutory definition, we must rely for our interpretation upon the language of the statute itself and from the other sections of the Tax Law. In so construing it, we believe that this relator is exempt from taxation. * * * The determination of the state tax commission should be annulled, and the proceeding should be remitted, for revision of the assessment, in accordance with the views above expressed. * * *"

2. Were the dividends received from the subsidiary Idaho corporation and the New York and the Ohio Oil Companies deductible before computation of the tax? The Idaho corporation did no business in Utah. (Finding IV by the commission.) These dividends were received by virtue of stock held in the Idaho corporation from earnings by that company on business done in Idaho. The statute provides in Section 80-13-21, R. S. U. 1933:

"(1) Rents, interest and dividends derived from business done outside this state less related expenses shall be allocated to this state. * * *

"(3) Rents, interest and dividends derived from business done in this state less related expenses shall be allocated to this state."

It is clear therefrom that if the business which produces the dividend is done outside of this state it is not allocable as income received from business, or the right to do business in this state. *California Packing Corporation* v. *State Tax Commission,* supra; *First Security Corporation of Ogden* v. *State Tax Commission,* supra; *Corporation of America* v. *Johnson,* 7 Cal. 2d 295, 60 P. 2d 417. And under the rule in those cases the dividends from the Idaho corporation

and the Socony-Vacuum and Ohio Oil Company are deductible before computation of the tax.

3. Do the proceeds from the sale of the oil stocks represent receipts from business done in Utah? It does not appear that anything with respect to the sale of this stock was done in Utah. These stocks were sold on the New York Stock Exchange by a member of that exchange, in New York. They were not sold in Utah nor under any right of the plaintiff to do business in Utah. A sale made within the state is business done within the state. A sale is made without the state to another person without the state and by an agent chiefly engaged in out of state business is not business done within the state. In the *California Packing case,* supra, [97 Utah 367, 93 P. 2d 467], we said:

"The language of the statute throughout evidences an intent only to determine the franchise tax from income from business done under the franchise from the state, that is business done within the state. The various methods of allocation are designed to restrict the tax to business done within the state and to assign to the state for taxation that portion of the business reasonably attributable to the state. There is also apparent a purpose to avoid double taxation. * * *

"Our statute, as quoted above, seems to manifest a clear intent on the part of the legislature that so called 'financial income' not derived from business done in Utah should not be included in gross receipts for tax computation purposes by the state. It first segregates rents, interest, dividends and gains from sale or exchange of capital assets from that part of the net income attributed to business carried on within the state and subject to the allocation fraction, and provides a specific rule for allocation of such income."

The legislature adopted a method of taxation which was meant to reach only the profits earned within this state. The general criterion for determining the place of sale in cases of executed contracts of sale is the place where the title to the property passes to the buyer as between himself and the seller. 23 R. C. L. p. 1253 and cases there cited. Income derived from sales made by a company operating

within the state, of goods purchased outside the state and sold to buyers outside the state, either from its factory within the state or from branches outside the state, is not income from business transacted within the state and so is not taxable. *United States Glue Co.* v. *Town of Oak Creek,* 161 Wis. 211, 153 N. W. 241, Ann. Cas. 1918A, 421, affirmed 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748.

"Income of a nonresident, having an office within the state, derived from purchases and sales of merchandise outside the state, is not taxable under a statute imposing a tax upon the income of nonresidents to the extent it is derived from business carried on within the state." 61 C. J. p. 1575 (note) : *People ex rel Stafford* v. *Travis,* 231 N. Y. 339, 132 N. E. 109, 15 A. L. R. 1319.

We quote with approval from *United States Glue Co.* v. *Town of Oak Creek,* supra [161 Wis. 211, 153 N. W. 244] :

"The income derived from goods which were produced and purchased outside of the state and shipped, either directly or by way of plaintiff's factory at Carrollville, to plaintiff's branch houses, and thence sold and delivered to customers without the state, is clearly a separable class of plaintiff's business. *Such business is transacted and located without the state, excepting incidental management from and accounting for the result thereof to plaintiff's principal office at Carrollville.* The carrying on of this part of the trade according to the findings of fact produced an income, which issued out of the business and properly located without the state. Under the facts and circumstances showing the manner of conducting this part of the plaintiff's business, it must be held that the income derived therefrom is attributable to the business conducted without the state, and hence not taxable under the law." (Italics added.)

It may be argued that since the Investment Company officials were in Utah when it was decided to sell the oil stock and from here contact the broker to sell the stock on the New York Exchange, that makes it business done in Utah. The rule announced by the authorities is to the contrary. The Missouri Court in *Claiborne Commission Co.* v. *Stirlen,* Mo. App., 262 S. W. 387, 389, said:

"Of course, the contract of agency was a Missouri contract, but the matter is not to be tested by that contract, but is to be governed by the law of the state where the agent actually conducted the purchases and sales for his principal's account."

The following cases while appealed from a different angle are enlightening and persuasive. *Atwater* v. *A. G. Edwards & Sons Brokerage,* 147 Mo. App. 436, 126 S. W. 823; *Hoyt* v. *Wickham,* 8 Cir., 25 F. 2d 777; *Portland Cattle Loan Co.* v. *Hansen Livestock & Feeding Co.,* 43 Idaho 343, 251 P. 1051; Fletcher, 9 Cyc. Corp. p. 9987, § 5929; *Mullinix* v. *Hubbard,* 8 Cir., 6 F. 2d 109.

It seems clear therefore that the proceeds from the sale of oil stock were not income from business done in Utah, but in New York, and are not allocable in business done in Utah.

The order of the Tax Commission is annulled and set aside.

MOFFAT, C. J., and PRATT, J., concur.

WOLFE, Justice (dissenting).

I dissent. I agree with the conclusion reached by the prevailing opinion that plaintiff corporation is not exempt under Sec. 80-13-5, R. S. U. 1933. However, I cannot subscribe to the criterion laid down for determining whether a corporation is or is not exempt under that section. The statute provides that it is whether the *"sole business"* of the corporation is that of a holding company. I should not think in any case it would lie in the mouth of the corporation to say that its business was ultra vires and hence its tax would not be measured by income from the business it did but only by the income from the business it was authorized to do. Under such ruling if it was authorized to do business solely as a holding company and did business as an investment company it might go free of tax.

Nor can I agree with the opinion wherein it holds that the dividends from the subsidiary Idaho corporation and the proceeds from the sale of oil stocks were not allocable

to business done in Utah and so not to be included in income on which plaintiff's franchise tax was computed. That there may be exposed for the reader's perusal a complete statement of the provisions of Sec. 80-13-21 which outlines the income to be allocated to this state for the purpose of this tax and that which is not so allocable, we set out the first five subsections thereof:

"The portion of net income assignable to business done within this state, and which shall be the basis and measure of the tax imposed by this chapter, may be determined by an allocation upon the basis of the following rules:

"(1) Rents, interest and dividends derived from business done outside this state less related expenses shall not be allocated to this state.

"(2) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated outside this state less losses from the sale or exchange of such assets situated outside this state shall not be allocated to this state.

"(3) Rents, interest and dividends derived from business done in this state less related expenses shall be allocated to this state.

"(4) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated within this state less losses from the sale or exchange of such assets situated in this state shall be allocated to this state.

"(5) If the bank or other corporation carries on no business outside this state, the whole of the remainder of net income may be allocated to this state."

Dealing first with the dividends from the Idaho corporation, the opinion states:

"The Idaho corporation did no business in Utah. * * * These dividends were received by virtue of stock held in the Idaho corporation from earnings by that company on business done in Idaho."

The opinion then holds such income to be clearly deductible in computing the franchise tax, under the above-quoted Subsection (1) of Sec. 80-13-21, as being from business done outside the state. Turning next to the proceeds from the sale of oil stocks the opinion holds such income is attributable to business done without the state, since the sale

took place on the New York Exchange and was handled by a member of that Exchange, in New York.

The palpable error of the prevailing opinion lies in its failure to recognize that the business of an *investment* company is different from that of other concerns (where investment is usually incidental involving surplus funds not needed to carry on the current business of manufacturing, trade or rendering services) and, therefore, the exercise of its franchise may differ greatly from that of other types of corporations. The opinion cites the cases of *California Packing Corporation* v. *State Tax Commission*, 97 Utah 367, 93 P. 2d 463; *United States Glue Co.* v. *Town of Oak Creek*, 161 Wis. 211, 153 N. W. 241, Ann. Cas. 1918A, 421, affirmed 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, and *People ex rel. Stafford* v. *Travis*, 231 N. Y. 339, 132 N. E. 109, 15 A. L. R. 1319. None of them involved investment businesses.

The case of *United States Glue Co.* v. *Town of Oak Creek*, supra, for instance, concerns a business having branch houses in other states, and a tax on income derived from goods produced and purchased outside the state and sold and delivered to customers outside the state. Significantly, it deals also with an *income tax* rather than a franchise tax. The case of *People ex rel. Stafford* v. *Travis*, supra, concerns income from deals done by foreign agents in foreign countries, but even so holds such income taxable in proportion to the amount of business done in purchasing and forwarding goods within the state, while excluding that from the business of selling.

When a business involves the selling of goods or services over or among several states, the situation may call for assignment of the net income derived from business done in this state as contrasted to income derived from business done in other states. But income from an investment business where that investment business is located in this state may be wholly assignable to this state even though the income is in the form of interest dividends and rents receiv-

able in this state and earned in another state. The invest-
ment business is *done in this state* when the company's sole
place of business is here, when its meetings are held here
and it has no outside offices, and when the income from all
its investments including rents from outside property (at
least where there is no outside resident agent attending to
the supervision, rental or collection of the rents of such
rented property is received here.) The Investment Company
may own stocks and bonds in outside companies which by
manufacturing, trading, investing or rendering services,
themselves create income from which the dividends and in-
terest are paid to the local investment company. But the
businesses of such outside companies earning such income
are their businesses whilst the business of the local invest-
ment company is that of investing in those stocks and bonds
and receiving in this state the dividends and interest from
them. The two are entirely different businesses and must
not be confused. The dividends earned and disbursed by
the Idaho Company were derived from its business; but the
receipt of such dividends by the American Investment Com-
pany here was part of its investment business *here* and was
income assignable to its business here.

The statute we here construe concerns, I repeat, the fran-
chise of an *"investment"* company. Its business consists of
transactions in the making of investments in other corpo-
rations and enterprises. Its profits or losses result from
doing such business. It does no other business. If any in-
come is derived from doing such business in this state, it
becomes the measure of the tax.

I must emphasize, therefore, that this *tax is not based
on the income or activities of the subsidiary Idaho corpora-
tion nor on the sale of the oil stocks in New York,* which
the prevailing opinion inferentially holds. It is based on
the income which plaintiff corporation received and dis-
bursed in this state from those sources, which was in pur-
suance of its investment business, which receiving and dis-
bursing in addition to its transactions in making invest-

ments constitutes its entire business, and which it could not do in this state without its franchise.

From the record we find that plaintiff's income in 1937 was $11,176.70. The record is clear that all of its business was done in Utah. Its only office was here. All of *its* rents, interest, and dividends could only be attributable to business done in this state since *it* did no business elsewhere. Nevertheless, the prevailing opinion tells us that if a large corporation, maintaining a large staff in this state to handle its receipts and disbursements, receives all of its income from dividends from stocks in foreign corporations none of that income can be computed in the tax. But because its neighboring corporation invests in stocks of Utah corporations, it may be taxed on such dividends. Further, by the prevailing opinion if a local broker with New York connection sells stock for plaintiff, in N. Y., the income is not taxable, but if such broker consummated the deal in Utah, the income would be taxable. It is clear that the opinion fails to understand that the business of the Idaho corporation or the oil companies in earning a surplus and declaring dividends is an entirely different business from plaintiff's business of owning stock and receiving dividends, and that in this case the franchise covers the latter type of business. Equally clear is it that the opinion fails to distinguish the business done by the broker in New York and that done by plaintiff here in placing the stock with the broker for sale, and receiving the returns therefrom.

By way of summary it may be pointed out that all of the business of plaintiff corporation took place in Utah and not a finger was turned as to *its* business outside of this state. Its directors held meetings in this state. Its officers functioned in their various capacities here. By virtue of such meetings and functions, it made investments by which income in the nature of dividends and "capital gains" was received and disbursed. Such constituted its entire business and such is clearly "doing business" for the purpose of com-

puting income on which to base a franchise tax, as decided in many cases. *People ex rel. Tobacco & Allied Stocks, Inc.,* v. *Graves,* 250 App. Div. 149, 294 N. Y. S. 995; *Cheney Bros. Co.* v. *Commonwealth of Massachusetts* (Speaking of Copper Range Co.) 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; 75 A. L. R. 1242, at pp. 1248-1250; *Montag Bros.* v. *State Revenue Comm.,* 50 Ga. App. 660, 179 S. E. 563, affirmed 182 Ga. 568, 186 S. E. 558; *Pacolet Mfg. Co.* v. *Query,* 174 S. C. 359, 177 S. E. 653, 98 A. L. R. 1444.

All of plaintiff's activities come within the scope of "doing business," and all of plaintiff's business was done in this state. All of its income is, therefore, allocable to business done in Utah, and should be computed in levying the franchise tax, both under the provisions of Subsection (3) and Subsection (5) of Sec. 80-13-21, R. S. U. 1933, set out hereinabove, Subsection (5) specifying particularly that if a corporation *"carries on no business outside this state, the whole of the remainder of net income"* is allocable to business done in this state. The order of the Tax Commission redetermining the tax to be paid by plaintiff should be affirmed.

McDONOUGH, Justice (dissenting).

I concur in the views expressed in the dissenting opinion of Mr. Justice WOLFE.