267 P.2d 772

**EMERALD OIL CO.**
v.
**STATE TAX COMMISSION.**

No. 7984.

Supreme Court of Utah.

March 1, 1954.

---

8. Cross, Harold L., "The People's Right to Know," p. 75 et seq.

380

Ray Rawlins, Jones & Henderson, C. E. Henderson, Salt Lake City, for plaintiff.

C. Preston Allen, Salt Lake City, for defendant.

WOLFE, Chief Justice.

Certiorari to review the decision of the State Tax Commission denying Emerald

Oil Company, petitioner, refund of an alleged overpayment of its corporate franchise taxes for the years 1949 and 1950. Petitioner charges that the decision of the Commission was contrary to the provisions of Title 59, Chapter 13, Utah Code Annotated 1953, because (a) during 1949 and 1950 petitioner was not doing business in Utah within the purview of said statutes and (b) the decision improperly allocates to Utah, income derived from business done without the state.

The facts are not in dispute. Petitioner was a Utah corporation in good standing from the date of its incorporation, January 14, 1909, until the date of its dissolution, March 20, 1952. During its early years of existence petitioner patented certain mining and oil claims it had acquired in Rio Blanco County, Colorado. After patenting the Colorado lands the activity of petitioner consisted mainly of leasing the aforementioned lands to third parties for the development, production and sale of oil therefrom. Petitioner at intermittent periods between leases produced and sold oil from its Colorado lands.

In 1940 and in 1942 petitioner leased the aforementioned lands to Equity Oil Company. Under the terms of each lease Equity was granted the exclusive right to possession of the Colorado lands for the purpose of developing them, drilling them to certain depths, and producing, storing and marketing oil therefrom. The title to all oil thus produced was in Equity and it had the exclusive right to market such oil. Petitioner retained the usual lessor's rights of inspection and certain surface rights in the property. The lease agreements obligated Equity to drill certain wells within a specified time or on failing to do so, to make certain stipulated rental payments to petitioner. The lease agreements also obligated Equity Oil Company and its assigns to pay royalties to petitioner on oil and gas produced and marketed from the lands.

Substantially the entire income of petitioner during 1949 and 1950 consisted of royalties paid by Equity to petitioner under the terms of the 1940 and 1942 lease agreements. It was on the basis of the income thus received that petitioner computed and paid its 1949 and 1950 franchise taxes. It is substantially the amount thus paid that Emerald now seeks to have refunded.

■ There is no dispute that petitioner was properly subject to the imposition of the Utah corporate franchise tax. Incorporation by a domestic corporation or qualification by a foreign corporation, unless expressly exempted by statute, subjects such corporation to the imposition of at least the minimum franchise tax. See 59–13–3, 59–13–1(5), Utah Code Annotated 1953; American Investment Corporation v. State Tax Commission, 101 Utah 189, 120 P.2d 331; J. M. & M. S. Browning Co. v. State Tax Commission, 107 Utah 457, 154 P.2d 993.

■ Though not an income tax, the amount of the franchise tax a corporation

must pay in Utah is based on the income yielded from exercising the privilege of doing business or exercising the corporation franchise in Utah. Sec. 59-13-20, Utah Code Annotated 1953, provides the basis for determining what portion of the total net income of a domestic corporation may properly be allocated to Utah and made to serve as the basis for computing the Utah franchise tax:

"The portion of net income assignable to *business done* within this state, and which shall be the basis and measure of the tax imposed by this chapter, may be determined by an allocation upon the basis of the following rules: (Emphasis added.)

"(1) Rents, interest and dividends derived from *business done outside this state* less related expenses shall not be allocated to this state. (Emphasis added.)

\*    \*    \*    \*    \*    \*

"(3) Rents, interest and dividends derived from *business done in this state* less related expenses shall be allocated to this state." (Emphasis added.)

These subsections govern income in the form of "rents, interest and dividends derived from business done" within and without the state of Utah. We are of the opinion that the royalty income received by petitioner under the terms of the two oil leases with Equity Oil Company comes within such provisions and is properly attributable to business done in Utah. Our reasons are three in number: (1) Such income was not produced from "business done" without the state. (2) The intent of the legislature in framing the allocation provisions of the franchise tax statute was that if income of a domestic corporation is not properly allocable to a sister state because of "business done" there, it is presumed to be allocable to Utah. (3) The substantial portion of the business activities of petitioner took place within Utah.

The business purposes of the petitioner are set forth in its articles of incorporation as follows:

"The purpose for which this corporation is formed and the pursuit and business to be engaged in is to acquire by purchase, lease, location, and entry, oil and placer lands, and to develop, and open, operate and sink oil and natural gas wells, conduct, construct and operate tramways, pipe lines, refineries and industrial plants, and the buying and selling and dealing in and with all supplies, merchandise and materials, raw or prepared, useful or convenient in connection therewith. *To lease,* bond or sell *all and singular of its holdings herein,* or any portion thereof, and do any and all things necessary for the development of the oil or gas industries, as herein now, or afterward to be owned or controlled by this corporation." (Emphasis added.)

■ It is elementary that the corporate franchise is co-extensive with the articles of incorporation. During 1949 and 1950 petitioner was engaged almost exclusively in leasing its holdings as it was empowered to do under its articles of incorporation. Those in control of the petitioner concluded that its business in 1949 and 1950 was "oil land leasing" and so stated in its tax returns for those years.

■ The activities of petitioner in Colorado during 1949 and 1950 consisted mainly of conducting various inspection trips to the Colorado lands to (a) verify the measure of oil produced; (b) compare the barrels of oil shipped from the field with the barrels of oil received by the refinery; (c) determine if lessee was drilling its quota of wells; (d) determine location, depth, quality of wells drilled; (e) determine the location of a telephone line route, condition of a warehouse, possible trespassing; (f) confer with certain Colorado authorities on tax problems. In addition it maintained a resident process agent in Colorado. Of course, the lands which are the subject matter of the leases are located in Colorado, but the leasing of properties owned by a foreign corporation in a state does not constitute doing business in that state. United States Rubber Co. v. Query, D.C., 19 F.Supp. 191. In our opinion the activities of the petitioner in Colorado are not of such a nature under the circumstances of this case to constitute "doing business" in that state so as to justify the

allocation of the royalty income of petitioner during 1949 and 1950 to Colorado. They were all activities to protect the petitioner's reversion or to determine whether the lessee was abiding by the terms of the lease. We accordingly hold, bearing in mind the statement made in the Browning case [107 Utah 457, 154 P.2d 996] that "The same conduct should be held to constitute the doing of business whether that conduct were done in Utah or done in another state. If upon certain conduct it would be held that a corporation was doing business in Utah so as to subject it to the corporate franchise tax, the same conduct in another state would constitute doing business in said other state and income derived therefrom would not be allocated to Utah."

■ A domestic corporation organized for purposes of profit and which receives income must be doing business somewhere. If the petitioner cannot be said to be doing business in Colorado so as to justify the allocation to Colorado of a portion of its net income derived from "business done" there, the income received by such corporation is presumed to be allocable to Utah. As was said in the Browning case, supra, when speaking of a business closely akin to that carried on by petitioner, "Unless it were made to appear that the petitioner was also conducting an investment business (doing business) in another state all of its net income from its investment busi-

ness done would be correctly allocated to Utah."

This is certainly what the legislature had in mind when it framed the Corporate Franchise Tax laws and stated: "Rents, interest and dividends derived from *business done* outside this state less related expenses shall not be allocated to this state." (Emphasis added.) For these reasons we are of the opinion that the royalty income of petitioner was properly allocated to Utah.

Our conclusion is bolstered by the fact that the substantial portion of petitioner's business activities took place within Utah. Petitioner's articles of incorporation stated: "The principal place of business of said corporation is and shall be at Vernal, Uintah County, Utah." At Vernal the following business activities took place: (1) All directors' meetings (normally monthly) were held in the Uintah State Bank. (2) All expenses were paid from the Uintah State Bank. (3) Dividends were distributed from Vernal. (4) The corporation banked in Vernal. (5) The corporate books, *muniments of title* and the leases with Equity Oil Company were kept in Vernal. (6) Policy discussions were held in Vernal at the regular meetings of the board of directors. (7) All royalty receipts were received at Vernal. (8) Both leases with Equity Oil Company were executed at Vernal. (9) Correspondence, management, and clerical activities connected with the leases were normally conducted in or from Vernal. All of the aforestated activities have received some recognition as factors to be considered in determining the location of "business done." See C.C.H. State Tax Reporter, New York, Book 1, Section 5-109. See also Utah State Tax Commission Corporation Franchise Tax Regulation Number 8 of April 15, 1945. We are of the opinion that the nature and extent of the activities of Emerald Oil Company in Utah, coupled with their continuity, frequency, and regularity, compared with its activities in Colorado adequately sustain the decision of the State Tax Commission.

Judgment affirmed. Each party to bear its own costs.

McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, J., concurs in the result.