Russell, J.
This is a proceeding under article 78 of the Civil Practice Act to review a’ final determination of the State Tax Commission affirming franchise taxes assessed against the petitioner under article 9-A of the Tax Law for the privilege years commencing November 1, 1942 and November 1, 1943, respectively.
The Tax Commission’s determination changed the petitioner’s classification for the purpose of franchise taxes from a transportation and transmission company taxable under sections 183 and 184 of article 9 of the Tax Law, to a business corporation, taxable under article 9-A of the Tax Law and assessed the petitioner in the sum of $5,968.39 for franchise taxes under article 9-A of the Tax Law for the tax year beginning November 1,1942, and in the sum of $37,526.28 for franchise taxes under article 9-A for the tax year beginning November 1,1943.
The main question presented to this court is whether the petitioner is properly subject to tax under article 9-A of the Tax Law, or as a transportation and transmission company subject to tax under article 9, sections 183 and 184 of the Tax Law.
The petitioner, McAllister Brothers, Inc., was organized under the Stock Corporation Law on March 30, 1936. Its chartered powers authorized the corporation to conduct almost any legitimate business and among its specified activities to conduct a marine transportation business as evidenced by its certificate of incorporation in part as follows: “ To build, equip, furnish, fit, purchase, charter, navigate and own steamers, towboats, lighters, derricks, barges, schooners and all other classes of boats, ships or vessels ivhatever the motive power of such vessels may be or whether such vessels have motive power or not:
“ To carry on in any or all of its branches the business of ship-owners, carriers by water of persons or property or either, the owming or operating of steamers, schooners, barges, derricks, lighters, scows, towboats and the like and of lighterage, towing, transportation, salving or wrecking, or any one or more thereof: • * * )*
*514 TMs business was first conducted by James McAllister, the originator, who started a marine transportation business in 1864 in New York City. At that time he formed a partnership with his brothers. The business of the partnership increased very rapidly. The fleet was purchased by the Pennsylvania Railroad and repurchased in 1918 by the McAllister Brothers partnership. Its business of ocean transportation service covered most parts of the world. In 1935 when the senior partner died, his interests were inherited by his spouse and ten children.
On the 27th day of March, 1936, the McAllister Brothers, Inc., was formed under the Laws of the State of New York. All assets, including the fleet of vessels, were transferred to the new corporation. For the purpose of avoiding any possible tort claims for injuries arising out of petitioner’s activities in marine corporations, the McAllister Lighterage Line, Inc., was formed, and then accepted the proposal and offer of the McAllister Brothers, Inc. to charter all of its vessels and operating equipment for a period of twenty years, the consideration being embodied in a resolution passed by the directors of the petitioner on November 13, 1937, which read as follows:
“ Resolved, that this corporation enter into a contract with McAllister Lighterage Line, Inc. to charter each and every vessel owned by McAllister Brothers, Inc. on a bare boat basis for the sum equivalent to the net profits per annum accruing to the McAllister Lighterage Line, Inc. from said operation at a minimum of $5,000 per annum (net profits to be gross earnings, less overhead, salaries, taxes, operating expenses) for a period of twenty (20) years.”
Since November, 1937, McAllister Brothers, Inc., has had but one employee on its payroll, namely, the president of its corporation. It has control of no equipment. The McAllister Lighterage Line, Inc., operates in excess of one hundred vessels of all types in the transportation business and employs from three hundred to four hundred men. It receives the gross income, and pays all expenses in connection with its business. The petitioner does not have control over the operation or use of this equipment. The petitioner’s assets consist of title to such equipment, cash and stock of other corporations.
Pursuant to article 9 of the Tax Law, transportation and transmission corporations are subject to (a) an annual franchise tax measured by capital stock (§ 183) and (b) an additional franchise-tax measured by gross earnings (§ 184).
Article 9-A of the Tax Law provided for a franchise tax computed at 6% of net income and payable by every domestic *515 corporation during petitioner’s first year of actual activities and remained substantially unaltered during the entire period here involved. The petitioner qualified as “a domestic corporation ” during the first year of its operation and was principally engaged in a transportation and transmission business. The petitioner filed its first tax report under article 9-A of the Tax Lav. This report was filed on January 27, 1938, for the privilege year commencing November 1, 1937, and reported petitioner’s activities for the fiscal year commencing November 1,1936 and ending October 31,1937, which indicated its business as that of towing and lighterage.
On March 27, 1939, the Tax Commission notified petitioner that on the basis of its report it had been reclassified from a business corporation to a transportation corporation. After said notification the petitioner filed reports and paid franchise taxes as a transportation corporation pursuant to article 9.
On January 28, 1942, petitioner filed its report for franchise tax under section 183 on capital stock for the year commencing January 1, 1942, reporting business operations for the fiscal year commencing November 1,1940 and ending October 31,1941. Its net income so reported was $99,473.10. On February 16, 1943, petitioner filed a similar report for tax year commencing January 1,1943, with respect to its business operations for the fiscal year commencing November 1, 1941 and ending October 31, 1942. Its net income as reported was $625,438.01.
After said reports were filed an investigation of the business activities of the McAllister Brothers, Inc., and the McAllister Lighterage Line, Inc., was made and it resulted in a determination by the Corporation Tax Bureau that the petitioner was erroneously classified as a transportation corporation and should file its tax pursuant to article 9-A. The petitioner then protested the assessments and a hearing was had.
On September 10, 1946, after said hearings the Tax Commission affirmed the franchise taxes as assessed in the amount of $43,494.67.
The petitioner relies strongly on the case in People ex rel. New York and Albany Lighterage Company v. Cantor (239 N. Y. 64). In that case the relator had been incorporated in 1909 under the Business Corporations Law (predecessor of the Stock Corporation Law). The facts in that case revealed that it chartered individual vessels or groups of vessels for particular hauling jobs merely as an incident of active transport operations, while the use of the vessels remained subject to the owners’ general supervision and control.
*516 In the instant case the petitioner had parted with all supervision and control of the vessels, holding only title. The line of distinction between the petitioner’s activities and that of the New York and Albany Lighterage Company is clear. The petitioner’s only business activities consisted in receiving the net profits as rental from another corporation over which it had surrendered all supervision and control, while the New York and Albany Lighterage Company retained supervision and control over all of its vessels, although it chartered individual vessels or groups of vessels for hauling jobs. The petitioner became merely the owner of personal property leased to another for a consideration, the same as the owner of either a mill or a department store who leases his property to a corporation over which he has no control or supervision and no voice in the operating activity of either corporation.
The other case petitioner relies upon for proper tax classification is People ex rel. Curran Funeral Service Co., Inc., v. Graves (257 App. Div. 888). In that case the relator, a domestic corporation, under its chartered rights operated motor vehicles of all kinds for the transportation of passengers. It furnished hearses for funerals and provided automobiles and supplied the services of chauffeurs. Its principal business was renting hearses, limousines, flower cars for the use of undertakers at funerals. The owners of this corporation retained complete control over their use and operation and also kept its cars in operating condition and directed the services of each chauffeur. It is clear it was properly taxed as a transportation business within the meaning of section 184 of the Tax Law.
The petitioner as further support to its contention that it is engaged in a transportation and transmission business, offered in evidence contracts between it and the United States Metals Befining Company and the American Metal Company, Ltd. Having surrendered control and entire supervision over all its vessels for a period of twenty years it is inconceivable how the petitioner could carry into execution any contract made by it for the purpose of transportation without a further contract being executed either between it and the McAllister Lighterage Corporation or some other transportation corporation. Its name to the contract was apparently a formality, because of the close association of the two McAllister corporations.
It is the further contention of the petitioner that its classification for franchise tax purposes is to be governed by its articles of incorporation and it remains so taxable regardless of the nature of the business it actually conducts. With this *517 view the courts do not concur, because it has firmly been established that classification for franchise tax purposes is to be determined by the nature of its business and that the purposes for which the corporation was organized are immaterial. This rule with respect to classification for franchise tax purposes applies especially to corporations organized under the general business corporation laws which have within their certificates of incorporation a wide variety of chartered powers. The Tax Commission under the authorities may change its classification for franchise tax purposes as the corporation shifts from one conduct of business to another. It is the nature of the business and not the chartered rights that determine the classification of the corporation under the franchise tax law. (People ex rel. Goodwin Sand & Gravel Co. v. Law, 207 App. Div. 567.)
The abatement of the tax as assessed for the privilege year commencing November 1, 1943 is not now before this court for determination by reason of the subsequent enactment of chapter 406 of the Laws of 1947, effective March 25, 1947. This matter should be remanded to the commission for determination on petitioner’s application.
We are, therefore, of the opinion that the determination of the State Tax Commission pertaining to the tax assessed under article 9-A of the Tax Law for the year commencing November 1, 1942, should be confirmed, and that the determination of the State Tax Commission pertaining to the tax assessed under article 9-A of the Tax Law for the year commencing November 1, 1943 should be remanded to the commission for the determination of petitioner’s application for abatement of the amount thereof by reason of renegotiation of its excess profits derived from war contracts, and in all other respects confirmed, with $50 costs and disbursements.
Hill, P. J., Hefferitan, Brewster and Foster, JJ., concur.
The determination of the State Tax Commission pertaining to the tax assessed under article 9-A of the Tax Law for the year commencing November 1, 1942, should be confirmed, and the determination of the State Tax Commission pertaining to the tax assessed under article 9-A of the Tax Law for the year commencing November 1,1943, should be remanded to the commission, for the determination of petitioner’s application for abatement of the amount thereof-by reason of renegotiation of its excess profits derived from war contracts, and in all other respects confirmed, with $50 costs and disbursements.